### McABEE v. HARRISON.

1. FINDING OF FACT.—The agreement in this case found to be that defendant should have the legal title to, and possession of, the land without accounting for rents and profits, and that plaintiff might redeem at price paid by defendant without interest.
2. IMPROVEMENTS—CONDITIONAL SALES.—Where a party buys land conditionally, and then makes improvements, he does so at his own risk.
3. ESTOPPEL—LACHES.—The plaintiff, under the circumstances in this case, is not estopped by conduct or laches from redeeming the land in question.
4. TAXES—ACCOUNTING.—Under the circumstances in this case, the defendant is not entitled to be reimbursed the taxes paid by him on the land.

Before TOWNSEND, J., Spartanburg, February, 1896. Modified.

Action by N. P. McAbee against the administrator and heirs at law of James F. Harrison on the following complaint:

I. That the plaintiff now is, and was at and during the times hereinafter mentioned, the owner of the following tract of land, to wit: eighty acres, more or less, situate and being in the county and State aforesaid, bounded by lands of S. N. Nesbitt, Wm. McAbee, Frank Floyd, estate of Jas. Harrison, deceased, and others. II. That during the lifetime of James F. Harrison, deceased—the father of the defendants—he became the owner of a mortgage over the aforesaid tract of land, and the plaintiff being then unable to pay off the debt secured by said mortgage without great sacrifice on his part, entered into a contract with the said James F. Harrison, by which it was agreed between the plaintiff and the said James F. Harrison that the plaintiff would cut off from said tract of land, thirty acres, more or less, and put the said Harrison in possession thereof, and allow him to remain in possession of said thirty acres, more or less, and to receive the rents and profits thereof, in lieu of interest or other payments on the debt secured by the mortgage until

such time as the plaintiff could pay off said debt, the said. Harrison contracting and agreeing to take possession of the said thirty acres of land and to hold it as the property of the plaintiff on the terms and conditions hereinbefore mentioned. III. The plaintiff, relying on said contract and agreement, did cut off from the aforesaid tract of eighty acres, more or less, bounded by lands of S. N. Nesbitt, Wm. McAbee, James McAbee and others, and did put the said James F. Harrison in possession thereof, as plaintiff had agreed to do, and the said Harrison entered into possession of the said thirty acres of land under and by virtue of said contract and agreement, and remained in possession of the same, holding it as the property of the plaintiff, and receiving the rents and profits arising from the same in the place and stead of interest or other payments on the debt secured by said mortgage, as he had agreed and contracted to do, up to the date of his death, on the     day of     18 . IV. That the defendant, Frank Harrison, has been duly appointed administrator of the estate of James F. Harrison, deceased, by the probate court for Spartanburg County, and has duly qualified and entered upon the discharge of the duties of his said office. V. That the defendants, since the death of the said James F. Harrison, have been in possession of the aforesaid thirty acres of land, more or less, claiming the same as their own, receiving the rents and profits thereof, and refuse to surrender the possession of said land or to account for the rents and profits thereof, notwithstanding plaintiff has demanded that they account for the same, and has tendered and offered to pay whatever amount was due upon the debt secured by the said mortgage, and has demanded of them the possession of said land. VI. That defendants have cut down and removed from said thirty acres a large lot of valuable wood and timber which was growing on said land, and have hauled away and removed from said place a large and valuable lot of rails, greatly to the injury of said land and to loss and damage of plaintiff. VII. That plaintiff is ready and willing to pay to defendants whatever sum may

be due on the principal of the debt secured by the said mortgage. Wherefore, plaintiff demands judgment against defendants: 1. That they be required to surrender possession of the aforesaid thirty acres of land to plaintiff. 2. That they be required to account to plaintiff for all the rents and profits secured by them or their ancestor since the time he went into possession, and to apply the same to the payment of the interest accruing on the debt secured by the said mortgage, and if the same amounted to more than said interest, that it be applied towards the extinguishment of said debt. 3. That they be required to account for and pay to the plaintiff for the value of all rails and timbers they have removed from said land, and for the damage done said land by said removal. 5. For such other and further relief as to the Court may seem fit and proper, and for the costs and disbursements of the action.

The defendants filed the following answer:

I. Admit so much of paragraphs 1, 2, and 3 as allege that during the life of said James F. Harrison he became the owner of a mortgage over land described in paragraph 1, and that plaintiff cut off thirty acres of said land, as described in the complaint, and placed said James F. Harrison in possession thereof; but deny that there was any contract or agreement that he was to hold said land as the property of plaintiff; but allege, on the contrary, that he received said land in payment, after satisfaction of said mortgage, and has made valuable improvements thereon. II. They admit paragraph 1V. III. They admit paragraph V., except that plaintiff has tendered them the debt secured by said mortgage, or demanded possession of said land. IV. They deny each and every allegation of the complaint not hereinbefore admitted. V. They allege that plaintiff agreed to make titles to said James F. Harrison, his heirs and assigns, but has never done so. VI. That defendants are heirs at law of James F. Harrison, and the rightful owners of said land. Wherefore defendants ask judgment: (1) That the plaintiff

be required by the Court to make legal title for said land to these defendants. (2) That the complaint be dismissed with costs.

The Circuit decree is as follows:

This action is brought for the purpose of cancelling a mortgage over eighty-six acres of land alleged to belong to plaintiff, and to compel the defendants to surrender to plaintiff the possession of thirty acres, more or less, which has been cut off the eighty-six acre tract and put in possession of James F. Harrison, the ancestor of the defendants, under an alleged agreement that he was to remain in possession thereof until the plaintiff could redeem it by paying the amount due on the mortgage, and that until this was done the rents and profits arising from the thirty acres was to be applied by Harrison as payment on the debt secured by the mortgage. The plaintiff also claims that the defendants have damaged him by removing a lot of rails from the thirty acres, and have cut and hauled off a lot of timber therefrom. The defendants admit that their ancestor became the owner of a mortgage over eighty-six acres of land belonging to the plaintiff, and that thirty acres thereof were cut off, and that their ancestor was put in possession of the same. They, however, deny that there was any such contract as is alleged by plaintiff; on the contrary, they say that the said thirty acres was cut off and their ancestor put in possession of it in payment and satisfaction of said mortgage. They also allege that they have put valuable improvements on the land, and that the plaintiff is estopped by his conduct and is barred by his laches from now claiming the land, and they demand that the plaintiff execute to them a deed for the land. The matter was referred to the master for Spartanburg County to take the testimony and report the same to this Court. This he has done. I have carefully considered the testimony and argument of counsel, and have reached a conclusion satisfactory to myself. The main question in the case is one of fact. How did

James F. Harrison take possession of the thirty acres? Was it the agreement that he was to hold it until McAbee could redeem it by paying the mortgage which Harrison held over the entire eighty-six acres, or was it sold to Harrison in satisfaction of the mortgage? I think that but one conclusion can be reached by an unprejudiced mind. Harrison took no deed to the land, although he lived near to the plaintiff; he retained possession of the note and mortgage; he repeatedly told persons who wanted to purchase this identical land that he could not sell, as it belonged to McAbee, whenever he got able to redeem. Not only is this so, but when the plaintiff offered the money to one of the defendants, it was refused—not on the ground that the land belonged to the defendants, but solely because the plaintiff would not consent to pay interest. I cannot reconcile these facts to the claim now made by the defendants that the land was sold to their ancestor, and that he was put in possession of it, in satisfaction of the mortgage. Having determined that James F. Harrison went into possession of this land under a contract that he was to hold it until plaintiff could redeem it by paying off the mortgage, I come to the next question: Has the plaintiff ever offered to redeem? There can be but one opinion as to this. The plaintiff, with three others, testified that he did offer to one of the defendants a roll of money. McAbee says it was $310. One of the witnesses says he saw it counted a short time before it was offered. Mr. Nesbit says this was the amount he let Mr. McAbee have. No one denies this. The defendant did not demand that it be counted. He refused it only because the plaintiff would not consent to pay interest. This being his sole objection, all others are waived. *Wood* v. *Babb*, 16 S. C., 431. I conclude, then, that the plaintiff did tender to the defendants, some time in the fall of 1892, $310, and that this was more than the principal of the mortgage debt. The question then arises, was this all that there was then due? If so, then it follows, under the authority of *Salinas & Son* v. *Ellis*, 26 S. C.,

337, that the lien of the mortgage is discharged, and that the defendants must surrender to plaintiff the possession of the thirty acres of land now in dispute, and must deliver up the mortgage to be cancelled. The solution of this depends entirely upon how much rent was received by the defendants and their ancestor from the land. On this point the opinions of the witnesses vary, some putting the rental value as low as $20, and others as high as $50 per year; but·when we look to the testimony of those who cultivated the land, I think that the rents received must have averaged the sum of $42 per year. This would pay the interest on the mortgage debt and leave an excess of $11.76 each year to be credited on the principal of the debt. Then, as the rents amounted to more than enough to pay the interest which accrued from year to year on the mortgage debt, and as the defendants and their ancestor were bound to apply this towards the payment of the debt, it follows, even if there were no agreement that they were to be so applied, that when plaintiff tendered to the defendants the sum of $310, he tendered the full amount that was due, and from that moment the lien of the mortgage was discharged. *Salinas & Son* v. *Ellis, supra.* I do not, however, think that the plaintiff has kept his tender good, and for this reason I cannot hold that since the tender the debt has ceased to draw interest, and that all of the rents must be credited on the principal of the note. I, however, think that the excess of $11.76 could be credited each year on said principal. . Nor can I hold that the plaintiff must pay to defendants the value of any improvements they may have put on this land. They took the risk when they put them there. There was and is no agreement for plaintiff to pay for these; and even if there was, still this claim does not, under the authority above cited, prevent the lien of the mortgage from being discharged.

It is, therefore, ordered, adjudged, and decreed, that the defendants surrender to plaintiff the possession of the land described in the complaint, to wit: Thirty acres, more or

less, belonging to the eighty-six acres, and that they deliver up the mortgage over the same to the clerk of this Court to be cancelled, and that the defendants credit the mortgage debt with the sum of $42 each year from and including the year 1886, until and including the year 1895, and that the plaintiff have judgment against the defendants for the cost and disbursements of this action.

From this decree the defendants appeal, alleging error in the Circuit decree, as follows:

I. That the main question herein is one of fact: Whether the agreement was a mortgage or an absolute sale, and in refusing to consider the question whether it was not conditional sale, with the right to the vendor to redeem. II. In not finding as fact that the agreement was for Harrison to receive said thirty acres "in lieu of interest or other payments on said debt secured by the mortgage" of the eighty-six acres, with the right to the plaintiff to redeem the said thirty acres at his option (complaint, part 1); and in not holding that said agreement was a conditional sale in satisfaction of said mortgage, with the right to the vendor to repurchase the said land in a reasonable time. III. In not holding that said N. P. McAbee, by his conduct and laches, has waived his right to so redeem said land, and is now estopped from doing so. IV. In not holding that if he can still redeem the land under the agreement and his subsequent conduct thereunder, he cannot do so without paying for the reasonable and necessary improvements made thereon with his knowledge and acquiescence. V. In holding that said agreement was a mortgage. VI. In finding that the rents of the place were worth $42 a year, and in charging the defendants with that sum each year. VII. In not allowing the defendants—mortgagees in possesion, if they were mortgagees—for their trouble and expense in managing the place, to be deducted from said rents. VIII. In not allowing them anything for amount expended for taxes, repairs, and necessary improvements made on the place

with the knowledge and acquiescence of plaintiff, to be deducted from gross amount of said rents. IX. If nothing is allowed for said improvements, then in not estimating the rent on the place in the condition the defendants' father received it; and in not deducting from the amount actually received a reasonable proportion thereof for the rent of the houses built thereon by the defendants and occupied by the renters of the place while it was in defendants' possession; and also in not allowing them the amount the rents were increased by their other improvements made on the land. X. In holding that the amount tendered by N. P. McAbee to Frank Harrison—to wit: $310—was all that was due on said alleged debt, and discharged the lien of the mortgage, if it was a mortgage. XI. In decreeing that the plaintiff have judgment for the costs and disbursements of this action, and in not decreeing that the defendants should have judgment therefor.

*Messrs. Nicholls & Jones*, for appellant.

*Messrs· Duncan & Sanders*, contra.

July 13, 1897. The opinion of the Court was delivered by

Mr. Justice Gary. In 1884, N. P. McAbee, the plaintiff, borrowed from the Spartanburg National Bank $302.40 on his note, with James F. Harrison and S. T. McCravy as indorsers, for the purpose of paying his indebtedness to the said McCravy. In order to indemnify them, he executed to them, jointly, a mortgage of his plantation, containing eighty-six acres of land. When the note matured, the bank notified S. T. McCravy and he notified the plaintiff. The plaintiff and James F. Harrison entered into an agreement, under which the plaintiff delivered possession of thirty acres of said land to James F. Harrison, and Harrison delivered to McCravy the money to pay the said note, which he did, and after scratching his name off the note, delivered it to Harrison. The said agreement was to be reduced to writing, but this was not done. After the death of Harrison, the note

and mortgage were found in a closet at his home. James F. Harrison made certain improvements upon the said thirty acres of land. James F. Harrison died in 1891, and thereafter the plaintiff tendered to the administrator of said Harrison $310, claiming that under the terms of the agreement aforesaid, he had the right to repurchase the said land upon the payment of that sum. The administrator refused to accept the money unless the plaintiff would pay interest on it. The plaintiff was, however, unwilling to pay interest unless the administrator would account for the rents and profits of the land. This action was commenced in consequence of the failure of the parties to agree upon a settlement. In order to understand clearly the issues presented by the pleadings, it will be necessary to set out in the report of the case the complaint and the answer. It was referred to the master to take the testimony and report the same to the Court. The case was heard by his Honor, Judge Townsend, who rendered a decree on the 19th of February, 1896, from which the defendants have appealed upon the exceptions which, together with the said decree, will also be set out in the report of the case.

The seventh exception was abandoned. The remaining exceptions raise the following questions: 1st. Was there error on the part of the Circuit Judge in his finding of fact as to the agreement between N. P. McAbee and James F. Harrison? 2d. Was there error on the part of the Circuit Judge in adjudging that the defendants were not entitled to compensation for the improvements erected by James F. Harrison? 3d. Was there error on the part of the presiding Judge in not holding that the plaintiff, by his conduct and laches, waived his right to redeem said land? 4th. Was there error on the part of the Circuit Judge in not allowing the defendants the amounts expended for taxes?

After a careful consideration of all the testimony, the Court is satisfied that the agreement between N. P. McAbee and James F. Harrison is correctly set forth in paragraph 2 of the complaint, except wherein it is alleged that

the said Harrison contracted and agreed to hold the land as the property of the plaintiff. He held the property as his own, and the title was to have been made to him, conveying the fee, but upon the conditions set out in the said paragraph. There is direct and positive testimony to the effect that Harrison was informed that McAbee's understanding of the agreement was that no interest was to be charged against him in case he was able to repurchase, as the rents and profits were to be in lieu thereof. When informed that McAbee understood the agreement as just stated, he said he would be glad if McAbee could redeem his land. There is also testimony that Harrison said he would work the land and try to make it pay all expenses. Our construction of the agreement is somewhat different from that placed upon it by the Circuit Judge. We agree with him that McAbee was not to pay interest on his indebtedness to Harrison, but we are of the opinion that Harrison was not to account for the rents and profits in case McAbee repurchased the land. This conclusion is strengthened by the fact that no account was kept of the rents and profits showing the amounts actually received from the land.

We will next consider the question as to the improvements. The improvements were made with the full knowledge on the part of Harrison of the terms upon which he went into possession of the land. He was induced to make the improvements because he believed McAbee would not be able to repurchase the property and took his chances of losing the benefit of them. The erection of the buildings by Harrison, with full knowledge of the agreement between himself and McAbee, was at his own risk, and his estate cannot claim compensation for them.

The third question is that of estoppel by conduct and laches, which we will now consider. McAbee had the legal title to the land; Harrison had the right to a title conveying the fee thereof, upon the terms hereinbefore stated, yet he took no steps to divest McAbee

of the legal title, and there is no testimony that he at any time demanded of McAbee compliance with the terms of the agreement; on the contrary, he, time and again, acknowledged the right of McAbee to repurchase the land. Furthermore, when McAbee tendered the money to the administrator of Harrison, the parties in interest were willing to allow him to repurchase, if he had been willing to pay interest, and no objection was made that he was estopped by conduct and laches.

The last question is in regard to taxes. No such claim is made in the answer; but waiving such objection, under the construction which this Court has placed upon the contract, such claim cannot be allowed. Harrison was, under the terms of the agreement, the owner of the property, subject to the conditions therein mentioned, and it was his duty to pay the taxes.

It is the judgment of this Court, that the judgment of the Circuit Court be modified in accordance with the views herein expressed.