# Johnson *et al.* *v.* Wood *et al.*

### *Bill in Equity to Redeem from under a Mortgage.*

1. *Notice of sale under a power in a mortgage; when requirements of mortgage sufficiently complied with.*—The requirements in a mortgage that notice of sale under the power should be given "by advertising the same in a newspaper published" in the county where the lands mortgaged were situate, "at least three times before the day of sale," is sufficiently complied with where the advertisement of the mortgage sale appeared consecutively for three weeks in a weekly newspaper published in said county; and such published notice of the sale is a substantial compliance with the requirements of the mortgage, notwithstanding the fact that in a few copies towards the last of one or two of the editions, said advertisement was taken out and another advertisement put in its place, which last few copies were intended and sent, not to domestic subscribers but, to the advertisers whose advertisements were put in the place of the notice of the mortgage sale.—(McCLELLAN, C. J., *dissenting*, holds that the stipulation in the mortgage for the publication of notice of sale under the power was for a publication of such notice in every copy of each edition of the paper published during the time prescribed; and that, therefore, the omission from some of the copies of the publication of such notice, was not a compliance with the stipulation.)

APPEAL from the City Court of Gadsden, in Equity. Heard before the Hon. JOHN H. DISQUE.

The bill in this case was filed by the appellants and

averred the following facts: On February 19, 1891, one Samuel L. Cox and his wife, E. W. Cox, executed and delivered a mortgage to the Land Mortgage Investment & Agency Company of America, limited, upon certain lands specifically described in the bill. A copy of this mortgage was attached as an exhibit to the bill. On October 31, 1892, Bamberger, Bloom & Co. recovered a judgment against the said S. L. and E. W. Cox, and upon this judgment executions were regularly issued, and levied upon lands which were included in the mortgage above referred to. Under these executions the said lands were, on May 20, 1895, sold by the sheriff to the complainants, Thos. L. Johnson and W. H. Barnes, and the sheriff gave them a sheriff's deed to said lands. It was then averred that on April 13, 1896, the Land Mortgage Investment & Agency Company of America, Limited, attempted to sell the lands conveyed in the mortgage under the power contained therein; "but that notice required by said mortgage of the sale was not given." At this sale one Benjamin Graham became the purchaser, and subsequently, on April 20, 1896, conveyed the said lands to J. H. Woods and J. W. Penn. That all of the purchase money not being paid, said Woods and Penn, for the balance thereof executed another mortgage upon the said lands to the Land Mortgage Investment & Agency Company of America, Limited, and part of this mortgage debt remained unpaid at the time of the filing of the bill. J. H. Woods and J. W. Penn and the Land Mortgage Investment & Agency Company of America, Limited, were made parties defendant to the bill.

The prayer was that a reference be held by the register to ascertain the amount due on the mortgage and that the complainants be allowed to redeem upon the payment of the amount so ascertained, and that the respondents be required to convey to the complainants all such title, right and interest which they might have to the lands described. the facts of the case pertaining to the only question reviewed on the present appeal, are sufficiently stated in the opinion.

On the final submission of the cause upon the pleadings and proof, the chancellor decreed that the notice required

by the mortgage to be given of the sale under the power, was sufficiently complied with, and that the complainants were not entitled to the relief prayed for. From this decree the complainants appeal, and assign the rendition thereof as error.

MOTLEY & SHORTS, for appellant.—It takes a foreclosure strictly in compliance with the power given in the mortgage to cut off the equity of redemption.—3 Brick. Dig. 652, § 332. The burden of proof is on the respondents in this case, as complainants claim under a creditor of E. W. Cox, so that the notice required in the mortgage was given as required then complainants are entitled to redeem.—*Wood v. Lake,* 62 Ala. 489; *Sanders v. Askew,* 79 Ala. 433; 2 Jones on Mortgages, § 1830. When notice is required to be given for a specified number of weeks it must be given by consecutive weekly insertions for the number of weeks so specified.—Code of 1896, § § 3043 and 3048. All the essential requisites of the power must be strictly complied with; and when there are statutory provisions relating to the notice, or the conduct of it, these must be strictly followed.—2 Jones on Mortgages, § 1822; 2 Jones in Mortgages, § 1827; 16 Am. & Eng. Encyc. Law, page 818 (b).; *Webber v. Curtis,* 104 Ill. 309; *Briggs v. Briggs,* 135 Mass. 306.

AMOS E. GOODHUE and W. R. NELSON, *contra.*—The sole question in the case is one of fact. Was advertisement made of the notice of sale in the Attalla Herald, at least three times before the day of sale? It will be observed also, that the deed from the Land Mortgage, Investment and Agency Company to Ben Graham, the purchaser at the sale, found on pages 14-16 of the transcript, recites of follows: "Which said notice was given by advertising the same in Attalla Herald, a newspaper published in said Etowah County, Alabama, at least three times before the day of sale." As against appellants, who claim under the mortgage, these recitals are *prima facie* evidence of the existence of the matters therein stated.—*Naugher v. Sparks,* 110 Ala. 76; *Gra-*

*ham v. Fitts,* 53 Ala. 307; *Tyler v. Herring,* 19 Am St. Rep. 297; 2 Jones on Mortgages, §§ 1821 and 1827.

HARALSON, J.—There is but the one question presented and insisted on,—whether or not the three weeks' notice required to be given for the sale of the property in question under the power in the mortgage, was given in conformity to the terms of mortgage.

The mortgage required that notice of sale under the power should be given, "by advertising the same in any newspaper published in Etowah county, at least three times before the day of sale." As to this notice it further provided: "It agreed that any irregularity in giving the notice, or of making the sale, shall not in any manner affect the sale."

The deed executed to the purchaser contained a recital of the compliance with the terms of the mortgage as to the notice of sale on foreclosure. These recitals in the deed were *prima facie* evidence of the facts stated therein as against the mortgagor and his privies (*Naugher v. Sparks,* 110 Ala. 572); and the complainants settled up the invalidity of the sale for the alleged failure to advertise the sale according to the requirements of the mortgage assumed the burden of overcoming this *prima facie* case of the sufficiency of the advertisement.

The chancellor in a well considered opinion held, "that the advertisement of the mortgage sale appeared regularly and consecutively for three weeks in the Attalla Herald (a weekly newspaper published in the county of Etowah), in accordance with the provisions and stipulations of the mortgage, with the exception, perhaps, of a few copies of the paper which were sent to the probate judge, clerk and register of the county, and which were not intended for them, but were to be sent to non-resident subscribers of the paper." It appears that during the time of the appearance of the notice of sale, the advertisement did not appear in all the copies of the paper printed, except that in a few copies towards the last of one or two of the editions, it was taken out, and that a solid or block cut of the advertisement of a patent medicine or a newspaper, was put in its place, and these

[Johnson *et al.* v. Wood *et al.*]

copies were intended for the advertisers of such things, to let them see that their cuts were appearing; but, as for the domestic subscribers, it satisfactorily appears the mortgage sale notice appeared in the copies mailed or sent out. It further appears that respondents knew nothing of this till long after the foreclosure sale, nor did complainants, and had nothing to do with it. We fail to see why the notice of sale which was given, was not in substantial compliance with the requirements of the mortgage.

The chancellor also decided, that the non-appearance of the notice in a few copies of the paper stricken off for the non-residents, was, at most, nothing more than a mere irregularity in giving notice, coming clearly within the terms of the agreement of the parties to the mortgage, namely, that any irregularity in giving the notice should not in any manner affect the sale. It is unnecessary for us to decide that question, as the one above referred to is fully decisive of the case. Let the decree of the lower court be affirmed.

Affirmed.

McCLELLAN, C. J. (dissenting.)—The stipulation in the mortgage: for the publication of notice of sale under the power of sale was essentially a stipulation for the publication of such notice in every copy of each edition of the paper published during the time prescribed: such was the contemplation of the parties, and so the law construes it. That the notice was not published in every copy of the regular weekly editions is demonstrated by original copies of the paper which were before the trial court and are before us. From how many of such copies the notice was omitted is not definitely shown; but that it was omitted from a large percentage of the copies brought to light on the trial of the cause the papers themselves show. Persons connected with the paper testify that it was omitted from only a few copies the last of the editions—some say half dozen, others as many as eighteen; and it is hard to escape the conclusion that they do not know how many papers of each edition failed to contain the notice. They account for the omission

in this way: They had contracts with the Simmons Liver Regulator Company and the Montgomery Advertiser to print in each paper of their weekly editions the advertisements of those concerns. Instead of doing this they would leave out these advertisements altogether until most of the edition had been printed, and then they would take out some of the matter and insert these advertisements in order to have copies to send to the Regulator Company and the Advertiser Company containing their advertisements so that upon false pretense they could collect as for insertions in all the papers of the edition. This was their custom as to all foreign advertisers. In the papers before us the notice of this mortgage sale was thus taken out and these other advertisements put in lieu of it. In the copies we have the two advertisements referred to are the only ones thus substituted, but doubtless in other copies of these editions other "foreign advertisements" were substituted for this notice of sale. The circulation of the paper is not shown. So we cannot know what percentage of the issue went out without this notice. That copies did go out without it to regular local subscribers is not denied. It may well be that its omission from one such copy wrongfully deprived the mortgagor of a bidder at the sale of his land and caused it to be sacrificed, so there is no room to affirm that he was not injured by the wrongful omission of the notice of sale even from one copy. I know of no ground upon which to rest a conclusion that such omissions of the notice, such violation alike of the stipulation of the contract and of the law is not fatal to the sale. The contemplation of the parties was that the notice should appear in each copy of the paper: that in legal effect is the mortgage stipulation. The contract with the publishers was to the same effect. The validity of the sale depended upon the notice of it being given accordingly. To purposely omit the notice from one half dozen copies is as essentially a violation of the stipulation as to omit it from an hundred and may be equally injurious to the mortgagor. If we in this connection get one inch from the rule of law and the contemplation and stipulations of the parties, we are entirely at sea. If we say that the

omission from a half dozen or from a dozen and a half of the papers is immaterial, there is the same jurisdiction—or the want of it—for holding innocuous its omission from an hundred or two hundred copies. Having destroyed the rule which should obtain and violated the contracts of the parties in respect of the half dozen or dozen and a half omissions there is no rule left and we are no longer constrained by any stipulations; but to the contrary are thrown back upon the wildest, most uncertain and unsafe speculation as to what would be or would not be a fatal number of omissions of the notice from the papers issued; and there is absolutely no criterion and none is even hinted at in the opinion of Justice HARALSON, other than the pure speculation of the individual judge for determining the matter. There must be some rule in this connection—some force must be given to contracts of the parties. The only possible rule, in my opinion, is that really embodied in the mortgage here and in the contract under which this newspaper undertook the publication of this notice that the publication shall be made in each copy of the paper, or at the very least it cannot be intentionally omitted from any of said copies even to enable publishers to swindle other people out of money on the false pretense that their advertisements have been duly published.