(79 South. 587)

IVY v. HOOD. (6 Div. 735.)

(Supreme Court of Alabama. June 20, 1918.)

1. MORTGAGES ⊂⊃554—FORECLOSURE—NOTICE.

Where mortgagee purchases land at foreclosure sale and executes and records a deed to himself, the recitals in the deed are prima facie evidence of the facts stated as against the mortgagor and his privies.

2. MORTGAGES ⊂⊃593—EQUITY OF REDEMPTION—ASSIGNMENT.

The statutory right of redemption (Code 1907, § 5746) is subject to assignment by the mortgagor.

3. MORTGAGES ⊂⊃600(1)—FORECLOSURE—PURCHASE BY MORTGAGEE.

Where mortgagee purchases under the terms of the mortgage, bidding a sum in excess of the mortgage indebtedness, he ceases to hold as mortgagee and holds as purchaser; but, if he purchases for a sum less than the debt, he still holds as mortgagee, in which case redemption may not be had for less than the whole mortgage debt.

4. MORTGAGES ⊂⊃591(2)—FORECLOSURE—NOTICE TO MORTGAGOR.

A mortgagee in possession as purchaser at his own mortgage sale is generally not required to give notice of his foreclosure and purchase, but equity requires that he do no affirmative act or make no declaration on which the mortgagor, not having actual knowledge of the sale, may rely and thereby be prevented from redeeming within the statutory period.

5. MORTGAGES ⊂⊃591(1)—PURCHASE BY MORTGAGEE—NOTICE—ESTOPPEL.

Conduct which would estop a mortgagee, purchasing at his own foreclosure sale from claiming that period of redemption has expired, mortgagor not knowing of foreclosure, may consist of acts, language, or an estopping or culpable silence, not a mere silence, that amounts to a representation or concealment of a material fact, known by the mortgagee, which prevented redemption.

6. MORTGAGES ⊂⊃596, 597 — FORECLOSURE — RIGHT TO REDEEM—ESTOPPEL.

The mortgagor is estopped to claim the right of redemption by conduct inconsistent with his right to redeem affecting rights of other persons.

7. MORTGAGES ⊂⊃593—EQUITY OF REDEMPTION—ASSIGNMENT.

Where mortgagee, who purchased at his own foreclosure, thereafter made an additional loan to mortgagor, who was ignorant of the foreclosure and who was being misled, such mortgagee

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

did not become the assignee of the statutory right of redemption within the meaning of Code 1907, § 5746.

8. MORTGAGES ⬯604 — FORECLOSURE — PAYMENT OF TAXES.

A mortgagee purchasing at his own foreclosure sale could pay taxes due out of the amount that he had bid.

9. MORTGAGES ⬯591(1)—EXPIRATION OF PERIOD OF REDEMPTION—ESTOPPEL.

Where mortgagee bid in land at his own foreclosure at an amount in excess of the mortgage debt and charges, mortgagor having no knowledge of the sale, and did not account for the surplus, and afterwards purchased at a tax sale and allowed mortgagor to redeem, and in his correspondence with mortgagor referred to the premises as "your" land, he is estopped, on application of the mortgagor to redeem, to claim the bar of the statutes as to redemption.

10. MORTGAGES ⬯616—APPLICATIONS TO REDEEM—TENDER.

Where mortgagee, without mortgagor's knowledge, foreclosed and purchased the land and misled mortgagor as to the fact, an averment, in a bill to effectuate the equity of redemption, that mortgagor was ready, willing, and able to pay the sums due mortgagee, but that he declined to accept payment and claimed to own the property involved, in his own right, and that mortgagor is able and ready to pay the amount into court upon ascertainment of the amount really due, was sufficient as an offer to redeem in equity.

Appeal from Circuit Court, Walker County; J. J. Curtis, Judge.

Bill by C. A. Ivy against J. W. Hood. Decree for defendant, and complainant appeals. Reversed and remanded, with directions.

J. H. Bankhead, Jr., of Jasper, for appellant. A. F. Fite and L. D. Gray, both of Jasper, for appellee.

THOMAS, J. The trial judge states, as the issue, whether or not respondent did anything which reasonably had the effect of lulling complainant into a supposed "security of his rights," and thereby "caused him to fail to redeem" his lands from the mortgage foreclosure within the statutory period.

[1] The decree recites that the foreclosure deed of date January 24, 1912, made an exhibit to the bill, was duly recorded in February, 1912. Under our registration statute, this record was notice, not only of the fact of foreclosure (Gill v. More, 76 South. 453;[1] Veitch v. Woodward Iron Co., 76 South. 124;[2] Gamble v. Black Warrior Coal Co., 172 Ala. 669, 55 South. 190; Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807), but of any inadequacy of consideration on which such sale was made (Drum & Ezekiel v. Bryan, 193 Ala. 395, 397, 69 South. 483).

In Jackson v. Tribble, 156 Ala. 480, 489, 47 South. 310, the declaration was that, if the mortgagee has power to purchase at a foreclosure sale and becomes the purchaser, he has the power to execute a deed to himself which will convey the title.

The recitals in the deed in the instant case, of foreclosure made to himself by J.

W. Hood, after advertisement and sale in accordance with the terms, were prima facie evidence of the stated facts as against the mortgagor and his privies. Dinkins v. Latham, 79 South. 493;[3] Johnson v. Wood, 125 Ala. 330, 28 South. 454; Naugher v. Sparks, 110 Ala. 572, 18 South. 45; Harton v. Little, 176 Ala. 267, 57 South. 851.

[2] After the foreclosure of complainant's mortgage dated September 3, 1908, and the purchase by and conveyance to respondent of the lands in question on January 24, 1912, complainant had the statutory right of redemption thereof which might be exercised within two years, as provided by statute (Code 1907, § 5746); and the statutory right of redemption is subject to assignment by the mortgagor (Code, § 5746; Cowley v. Shields, 180 Ala. 48, 52, 60 South. 267; Johnson v. Davis, 180 Ala. 143, 60 South. 799; Baker, Lyons & Co. v. Eliasberg Bros. Merc. Co., 79 South. 13[4]); but the debtor assignee could not assign this statutory right to redeem (Leith v. Galloway Coal Co., 189 Ala. 204, 66 South. 149; Patterson v. Holmes, 79 South. 581[5]). The expressions to the contrary effect in Lewis v. McBride, 176 Ala. 134, 57 South. 705, have been qualified by the foregoing authorities. Upon failure to redeem within the time prescribed by the statute, the title becomes absolute in the purchaser at a foreclosure sale; that is, if no superior or estopping equity has intervened to prevent the assertion of such title. Baker-Lyons Co. v. Eliasberg Merc. Co., 201 Ala. 591, 79 South. 13.

[3, 4] After the valid foreclosure, at which the mortgagee was the purchaser under the terms of the mortgage, bidding a sum in excess of the mortgage indebtedness, he ceased to hold as mortgagee, but held as purchaser. Hale v. Kinnaird, 76 South. 954.[6] On the other hand, if a mortgagee purchases for a sum less than the debt, he still holds as mortgagee; and for such reason it is held that redemption may not be had for an amount less than the mortgage debt. Cowley v. Shields, supra; Code, § 5749, subd. 4. A mortgagee in possession as purchaser at his own mortgage sale is generally not required to give notice of his foreclosure and purchase, but may remain silent. However, equity and good conscience require that he, as such mortgage purchaser, do no affirmative act or make no declaration on which the mortgagor, not having the actual knowledge of the fact of foreclosure, may rely, and thereby prevent mortgagor from effecting redemption within the statutory period. That is, the mortgagee purchasing at his own sale must not thereafter, by word or act, work an estoppel against himself as purchaser that would prevent him from asserting his right or title so acquired against him who has the statutory right of redemption.

[1] 200 Ala. 511.    [2] 200 Ala. 358.    [3] Ante, p. 101.    [4] 201 Ala. 591.    [5] Ante, p. 115.    [6] 200 Ala. 596.

[5] The general elements of such an estoppel are: (1) Conduct, which may consist of acts, language, or an estopping or culpable silence, not a mere silence, that amounts to a representation or concealment of a material fact (2) actually known or necessarily imputed to be known to the party estopped at the time of the conduct, (3) the truth concerning which fact was unknown to the party in whose behalf the estoppel is to operate, "at the time when the conduct was done, and at the time when it was acted upon by him." (4) The conduct must have been done with the expectation, or under such circumstances as that it is probable and natural, that it will be acted upon, and (5) relied upon by the other party, who, thus relying, is led to act upon that conduct (6) in such manner as to change his position with reference to the subject-matter or properties. 2 Pom. Eq. Jur. §§ 805, 807. (7) To preclude the owner of land from asserting his legal title or interest under such circumstances, "there must be shown either actual fraud, on his part, in concealing his title; or that he was silent when the circumstances would impel an honest man to speak; or such actual intervention on his part, as in Storrs v. Barker, 6 Johns. Ch. (N. Y.) 166, 10 Am. Dec. 316, so as to render it just that, as between him and the party acting upon his suggestion, he should bear the loss." Greil Bros. v. McLain, 72 South. 410;[7] Dinkins v. Latham, 154 Ala. 90, 97, 45 South. 60; Hoene v. Pollak, 118 Ala. 617, 623, 24 South. 349, 72 Am. St. Rep. 189; Porter v. Wheeler, 105 Ala. 451, 17 South. 221; Prickett & Maddox v. Sibert, 75 Ala. 315; Hendricks v. Kelly, 64 Ala. 388; Kelly v. Hendricks, 57 Ala. 193; Gimon v. Davis, 36 Ala. 589; Chapman v. Hamilton, 19 Ala. 121; Doe ex dem. McPherson v. Walters, 16 Ala. 714, 50 Am. Dec. 200; Knauff & T. Co. v. Elkhart Co., 153 Wis. 306, 141 N. W. 701, 48 L. R. A. (N. S.), 744, 778; Wiser v. Lawler, 189 U. S. 260, 271, 23 Sup. Ct. 624, 47 L. Ed. 802; Brant v. Virginia Iron & Coal Co., 93 U. S. 326, 337, 23 L. Ed. 927.

Concerning knowledge, and the means of knowledge of the material facts, by the party invoking the estoppel, at the time of the conduct on which the estoppel is rested and at the time when the estopping conduct is acted, Mr. Pomeroy says:

"It has been said that, in cases of alleged estoppel by conduct affecting the title to land, the record of the real title would furnish a means by which the other party might ascertain the truth, so that he could not claim to be misled, and could not insist upon an estoppel. This conclusion, if correct at all, is correct only within very narrow limits, and must be applied with the greatest caution. It must be strictly confined to cases where the conduct creating the alleged estoppel is mere silence. If the real owner resorts to any affirmative acts or words, or makes any representation, it would be in the highest degree inequitable to permit him to say that the other party, who had relied upon his conduct and had been misled thereby, might have ascertained the falsity of his representations." Eq. Jur. vol. 2, §§ 809, 810, 876, et seq.

On this question it has been declared generally by our court that, where the instrument under which the person claims title is duly of record, no mere silence on his part as to his title will work an estoppel, since the registration provided by statute is all the notice one is required to give, so long as he remains passive. Steele v. Adams, 21 Ala. 534, 541; Porter v. Wheeler, supra. And in Dixie Grain Co. v. Quinn, 181 Ala. 208, 217, 61 South. 886, the recording of a mortgage containing a power of sale was declared to operate as a notice of such power, and of any title acquired by a purchaser thereunder, although the foreclosure is not recorded. If, however, a person holding under a recorded instrument does not remain merely passive, but does some affirmative act to mislead or deceive, he may be estopped to assert title against persons dealing with his property as their own. 11 Am. & Eng. Ency. Law (2d Ed.) p. 436; Porter v. Wheeler, supra, 105 Ala. 458, 17 South. 221; Brewer v. Brewer & Logan, 19 Ala. 481; Prickett & Maddox v. Sibert, supra; Sims v. Riggins, 201 Ala. 99, 77 South. 399.

In Graffam v. Burgess, 117 U. S. 180, 186, 189, 190, 192, 6 Sup. Ct. 686, 689 [29 L. Ed. 839], the bill was to redeem, and was successfully maintained, though filed after expiration of the period allowed by the statutes of Massachusetts for redeeming lands sold under execution. Mr. Justice Bradley, delivering the opinion, said:

"It is insisted that the proceedings [the execution sale and the purchase thereat] were all conducted according to the forms of law. Very likely. Some of the most atrocious frauds are committed in that way. Indeed, the greater the fraud intended, the more particular the parties to it often are to proceed according to the strictest forms of law.

"Considering the amount of the stake to be won, and the overwhelming injury to be inflicted upon an unsuspecting woman, it is difficult to regard with equanimity the proceedings of the defendant as the year of redemption drew to its close, and after it had terminated. * * *

"In any light in which Graffam's conduct may be viewed, it is clear that he did not pursue an open, straightforward course. As we view the proofs, he evidently conceived the design of getting complainant's property for a mere nominal consideration, or else, of getting her into his power so as to compel her to comply with any exorbitant demands he might choose to make. He knew she was ignorant of the sale, and of the position in which the sale placed her. He stood by and saw her expending large sums of money on the property in total unconsciousness of his proceedings, and of the means of injuring her which he held in his hands. Instead of *undeceiving her*, he gave her a mere perfunctory notice that if she did not settle the claims which he held he would have to take it out of her property, and *pursued just such a course as was calculated to lull instead of exciting any suspicions of the real danger in which she stood; all the time purposing to take possession of the property for his own use as soon as her back was turned*, and keeping spies to watch her proceedings, and to find a favorable opportunity of clandestinely slipping into the premises in her absence. If this is not

[7] 197 Ala. 136.

fraud, we should have great difficulty in defining what 'fraud' is. * * *

"Looking at the whole case, the traces of design on the part of Graffam to mislead the complainant, *to lull her into security, and thus* to prevent her from redeeming the property [all italics supplied], are abundantly manifest, and such design must be assumed as an established fact in the case."

In Schroeder v. Young, 161 U. S. 334, 344, 16 Sup. Ct. 512, 516 [40 L. Ed. 721], Mr. Justice Brown said:

"Defendant relies mainly upon the fact that the statutory period of redemption was allowed to expire before this bill was filed, but the court below found in this connection that, before the time had expired to redeem the property, the plaintiff was told by the defendant Stephens that he would not be pushed, that the statutory time to redeem would not be insisted upon, and that the plaintiff believed and relied upon such assurance. Under such circumstances, the courts have held with great unanimity that the purchaser is estopped to insist upon the statutory period, notwithstanding the assurances were not in writing and were made without consideration, upon the ground that the debtor was lulled into a false security. Guinn v. Locke, 1 Head [Tenn.] 110; Combs v. Little, 4 N. J. Eq. 310 [40 Am. Dec. 207]; Griffin v. Coffey, 9 B. Mon. [Ky.] 452 [50 Am. Dec. 519]; Martin v. Martin, 16 B. Mon. [Ky.] 8; Butt v. Butt, 91 Ind. 305; Turner v. King, 2 Ired. Eq. [37 N. C.] 132 [38 Am. Dec. 679]; Lucas v. Nichols, 66 Ill. 41; McMakin v. Schenck, 98 Ind. 264.''

In Murphy v. Teutsch, 22 N. D. 102, 132 N. W. 435, 35 L. R. A. (N. S.) 1139, Ann. Cas. 1913E, 1185, the authorities are collected, declaratory of the power of a court of equity in a certain class of cases to permit the redemption of real estate sold under execution, after the statutory period has expired.

In Dickerson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618, the facts were:

"A., the owner in fee of lands in Michigan, died in February, 1853, leaving his two children B. and C. his only heirs at law. On March 3d, C. and her husband conveyed the lands by warranty deed to D., who put it upon record March 6, 1854, and entered into possession of them April 1st of that year. D., learning of the existence of B., and that he lived in California, wrote to him, inquiring whether he made any claim to the premises. On April 1, 1856, the latter addressed from California to his sister C., in Michigan, a letter, wherein he said: 'You can tell D. for me he need not fear anything from me. * * * You can claim all there. This letter will be enough for him. I intended to give you and yours all my property there, and more if you need it.' The contents of that letter becoming known to D., he, for a valuable consideration and by deeds with covenants of warranty, conveyed in fee the lands to E. and others, who thereunder have ever since occupied and improved them. July 9, 1865, B. conveyed the undivided half of them by quitclaim deed to F., who, March 6, 1873, brought ejectment. *Held:* (1) That B.'s letter of April 1, 1856, operates an estoppel in pais which precludes him from setting up a claim to them, and is an available defense to the action. (2) That F. was not a bona fide purchaser, and that whatever title he acquired was subject to the legal and equitable rights of D. and those claiming under the latter." (3) That the letter disavowing ownership or any interest in the lands estopped the writer from thereafter claiming the same, to the detriment of subsequent purchasers from the sister to whom the letter of estoppel was written.

Many authorities throughout the states supporting this decision are collected in the annotation thereof in 9 Rose's Notes, U. S. Rep., p. 872 et seq.; Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168; Id., 94 U. S. 680, 24 L. Ed. 307. The reason of these authorities, as early declared in Dair v. United States, 16 Wall. 1, 21 L. Ed. 491, was that whenever an act is done or statement made by a party, which cannot be protected without fraud on his part and injury to others whose conduct has been influenced by the act of admission, estoppel will attach to what otherwise would be a mere matter of evidence.

[6] A mortgagor is estopped to claim the right of redemption when he has conveyed the premises to the mortgagee without reservation of his right, or when he has acquiesced in a conveyance by the mortgagee thereof to a stranger, or when he has accepted and retained the surplus proceeds of a foreclosure sale without any attempt to redeem from it, or by declarations or conduct on his part, inconsistent with his right to redeem, has affected the rights or actions of other persons to their material prejudice. For like reasons and authority, a mortgagee who has foreclosed and thereafter positively continuously recognized the right of the mortgagor to the redemption, would be estopped to deny that right, provided such mortgagor had been induced by such conduct or admission of the mortgagee to fail to redeem, within the time prescribed by the statute, or to act with reference thereto to his material detriment. McAbee v. Harrison, 50 S. C. 39, 27 S. E. 539; 27 Cyc. 1819, 1820.

In Benson v. Bunting, 127 Cal. 532, 59 Pac. 991, 78 Am. St. Rep. 81, the cases are collected to the effect that where, before the time to redeem expired, the redemptioner was told by the holder of the legal title that the statutory period would not be insisted upon, and the former, believing and relying on such assurance, failed to effectuate redemption, an estoppel arises to prevent the insistence upon the statutory period, notwithstanding such assurances were made without consideration and were not in writing. The equitable principle upon which relief rests in such cases is that the debtor was lulled into a false security to his prejudice. McNees v. Swaney, 50 Mo. 388; Wright v. Bates & Miles, 13 Vt. 341; Kopper v. Dyer, 59 Vt. 477, 9 Atl. 4, 59 Am. Rep. 742.

The principles of justice and of right conduct between man and man, and those finding application in estoppel against mortgage foreclosure and judgment enforcements in proper cases, and in redemptions from judgment and foreclosure sales, are not essentially different. Such equitable principles find expression in the great decisions we have cited and from which we have quoted, and they have direct application to the facts of the instant case. In saying this we are not unmindful of different rules prevailing in

the redemption from sales under judgments and mortgages.

[7] Appellee insists that by the mortgage given by the complainant and delivered between the dates of March 18 and March 24, 1913, after the foreclosure of the former mortgage (that of September 3, 1908, foreclosed January 24, 1912) and before the expiration of the statutory right of redemption, he, as the grantee therein, became the assignee of the statutory right of redemption within the meaning of that phrase as used in section 5746 of the Code. Such was not an unqualified assignment of the statutory right of redemption; in equity, it was no more than a loan secured by the mortgage, and not a sale.

As we view its effect, the mortgage of March 18-24, 1913, is important only as shedding light on the equitable estoppel set up by complainant, in reply to or denial of respondent's assertion in a court of equity of his title acquired by the foreclosure, and of the fact of expiration of two years after the foreclosure before the filing of his bill to redeem.

[8] The evidence is without dispute that respondent purchased the land at his own foreclosure sale, for $1,362—a sum largely more than that due on the mortgage. The preponderance of the evidence was also to the effect that this purchase price was greatly less than the real value of the land; according to respondent's evidence, it was worth $6,600, and, according to complainant's evidence, it was worth $17,200, $22,000 and other sums up to $33,000. The bid of respondent at foreclosure, presumably, was to embrace with the mortgage debt the reasonable expense of foreclosure, together with an item of more than $300, accrued taxes. An excess of about $387 therefore remained in the purchaser's possession for the account of the mortgagor. It is true that the mortgage contained no provision as to the payment of taxes; but it was necessary that the taxes be paid, in order to preserve a superior mortgage lien on the property, and the taxes were a lawful charge on the lands when paid by the mortgagee to protect his superior lien thereon. Gunter v. Townsend, post, p. 160, 79 South. 644.

[9] After foreclosure and after tax sale (January 24, 1912), this purchaser does not offer to pay over to the mortgagor this balance, after payment of mortgage debt, etc., of about $387. If the mortgagee had discharged his affirmative and imperative duty as purchaser, by promptly accounting to the mortgagor for this balance, this simple act of honesty and justice would have disclosed to the absent or nonresident (of the county) mortgagor the fact of such foreclosure and purchase by the mortgagee, of said lands, at mortgage sale as well as at tax sale. This was a positive duty, demanded alike by simple justice and fair dealing. Its disregard thereafter amounted to a guilty silence as to his foreclosure of the mortgage and purchase thereunder, and was incompatible with the good faith due from a mortgagee purchasing at his own sale for an amount in excess of the mortgage debt, expenses, and taxes. Thereafter it became a beguiling silence, in connection with his subsequent acts and declarations. It may be that this conduct, without more, would raise the estoppel pleaded against his claim of the bar of the statutes as to redemption. However, subsequent acts and declarations operate an equitable estoppel against his assertion of the bar of the statutes, or denial of the right of redemption in complainant, which complainant had the right to rely on within the rules above pointed to as prevailing in such matters, and did so rely on, to his prejudice and mistaken belief in its truth. That conduct was that on August 26, 1912, he wrote complainant:

"In answer to yours of recent date, will say that I am the man that bought your land in as I held a mortgage against it. I paid the tax and am still paying the tax, and will pay them on until you are ready to redeem it, as you know of course that the tax money will draw interest. So I am in no special rush. *You can redeem when you want to.*" (Italics supplied.)

By the use of the words, "In answer to yours of recent date, will say that I am the man that bought *your land in,*" the writer, it is reasonably to be inferred, admitted his purchase at the sale of the land for taxes. That this was his meaning is placed beyond controversy by respondent's testimony as follows:

"Q. Did you understand that he had been here investigating the matter as to the tax sale? A. I supposed he had by saying he had redeemed it. *He wrote to me that he had heard the land had sold for taxes and I had bought it in. I answered and told him I had.* Q. He redeemed from that sale? A. Yes. Q. At that time, the time of redemption under the mortgage hadn't expired, had it? A. No. sir."

The question—or rather the qualifying clause of the question—"At that time," by context is shown to have referred to the time of writing said letter, as well as to the time of redemption from the tax sale. Thus again there was forced on the purchaser at the mortgage sale not only the opportunity but the positive duty to speak frankly and fully, and not to remain longer silent as to his foreclosure of the mortgage and his purchase of the lands thereunder; and to account to the mortgagor for the balance of the purchase money held for his account—a sum aggregating more than a sufficiency to effectuate the payment of the taxes without a sale, or the redemption from the tax sale by the respondent. If respondent had then discharged this duty to complainant, the latter would have had timely knowledge of the foreclosure; if he could not find complainant, to account, he should have used from this balance of the purchase money the sum sufficient to discharge the tax liens, instead

of acquiring the tax title himself. That respondent pursued an equivocal course he admits in this letter to Ivy, by saying: "I bought your land in, as·I held a mortgage against it. You can redeem when you want to." Could any statement have been more misguiding or misleading? He did not follow the open course of his duty, but attempted, while retaining complainant's moneys, to acquire title to Ivy's valuable lands by purchasing at the tax sale. It was of this sale that knowledge came to complainant, and this sale of which he wrote to respondent, and concerning which the latter replied, as indicated in the letter above set out, departing from the course of an estopping, beguiling silence as to his purchase.

Any fair interpretation of the letter will give it the effect of a positive declaration by such lienholder or purchaser that he held (1) as owner under the tax sale or title, and (2) as a mortgagee; and that (3) as such lienholder (not owner) he was content with having his liens or claims draw interest, being in no "special rush" to have payment of the tax charges and mortgage liens held by him on the land. The natural response to this information and consent was made on October 5, 1912, when Ivy redeemed from the tax sale by paying to the judge of probate of the county in which the land lay, pursuant to the statute (Code, § 2314), the necessary sum, $325.15, for respondent's account. And at this time respondent was secretly withholding from complainant more than $300 due him under the foreclosure purchase. The limit for redemption from the tax sale was not more imperative than the limit for statutory redemption from the mortgage sale. Had Ivy known the facts, and not been misled by the acts, declarations, and culpable silence of respondent, possibly he would have redeemed from the mortgage, as well. The presumption, at least in the light of the facts declared by the record, is that he would have so redeemed from the mortgage as well as from the tax sale.

Were this all the evidence, a case not unlike that discussed in Graffam v. Burgess, 117 U. S. 180, 6 Sup. Ct. 686, 29 L. Ed. 839, would have been presented. '

That Hood did recognize some obligation or duty or equity resting on him, as to Ivy's unfortunate situation, is shown in his acknowledgment contained in his letter to Ivy written just before the bill was filed, and when the latter was seeking to redeem. We will set out the letter in the opinion. The foreclosure had taken place on January 24, 1912. Respondent's letter to Ivy, of date August 26, 1912, was written in response to an inquiry by Ivy to Hood, of recent date; and the redemption from the tax sale, the subject of this correspondence, was effected October 5th following. In the early part of 1913, not knowing of the foreclosure, Ivy appealed to respondent for another or additional loan, of $500, to which request the latter acceded, without mentioning the fact of his previous foreclosure. In these negotiations, respondent replied, of date March 18, 1913, as follows:

"I am inclosing your mortgage filled out due in one year for $500.00 on your land in section 28. I don't guess I will need it in a year, and if not will let you keep it as long as you want it or till I need it. Sign the same before J. P. and have it fixed up right and send it to me and I will send you check. As I said I don't think I will need it in a year, but will let you keep it until I need it."

After Ivy had executed the mortgage so prepared by respondent, and delivered the same, the latter remitted the proceeds with letter as follows:

"Dear Sir: Please find check inclosed for $500.00 in regard to land in section 30, will say if you was to sell this land, we will arrange that all right then."

It will be noted that the lands were again referred to by respondent as "your land," and that the time of payment of the loan was as indicated by the lender in his letter, by the expression, "will let you keep it until I need it," "if you was to sell this land [in section 30] we will arrange," etc. Such expressions are wholly inconsistent with an absolute ownership in a purchaser, being consistent only with an interest as a mortgagee. A further injurious fact is apparent in the last transaction, in which the due date of the mortgage was made March 18, 1914, a date after the expiration of the two-year period of redemption from foreclosure sale. Ivy did not draw this mortgage or fix its terms; respondent did this and sent the mortgage "filled out," after having acceded to Ivy's request to omit the lands in section 30, that he might sell. Respondent transmitted the full amount of the loan, not even deducting expenses and the interest to accrue thereon, as he had done in making previous loans of $500. This conduct was wholly incompatible with that of a purchaser at the foreclosure of a mortgage, or with that of a purchaser of the statutory right of redemption. Alexander v. Mobile Auto Co., 200 Ala. 586, 76 South. 944.

Respondent testified that, after conference with his attorney, he thought the mortgage would operate as a purchase by and conveyance to him of the statutory right of redemption. His conduct was not that of a frank and open purchaser of such statutory right remaining in the mortgagor, but showed the effort, by implication or operation of law, to acquire Ivy's right indirectly by giving the transaction the form of a loan, with mortgage, for the sum of $500. The familiar maxim, "Once a mortgage always a mortgage," must be given full force under such facts in a court of equity. Glass v. Hieronymus, 125 Ala. 140, 28 South. 71, 82 Am. St. Rep. 225; Howard v. Harris, White & Tudor, Lead. Cas. in Eq. vol. 2, pt. 2, p. 1949; Patterson v. Holmes, supra.

Ivy's account of this last loan, as it related to the lands in section 30, was:

"Q. Had you said anything to Mr. Hood about selling a part of this land? A. Yes, sir; I wrote him in regard to it. Q. Was that at the time this loan matter was being negotiated? A. Yes, sir."

A reasonable inference from the evidence as to the lands in section 30, and from the statements relating thereto in Hood's letter, was that Ivy's request of Hood was that of a kindly mortgagee—that he reduce his security and make it possible for the former to sell his lands if he should have the opportunity—and that the mortgagee agreed, by the omission from the security of lands in section 30, and by the promise, in the event of a sale by the mortgagor, "to arrange it all right then," to the end of giving the purchaser a title freed of respondent's mortgages. Ivy testifies that when, about July 10, 1916, he was informed of respondent's claim as a purchaser of his land, he went to see respondent, who informed him for the first time that he had "foreclosed," and that he proposed not to make a deed back unless he had to do so; that complainant remained several days, trying to effectuate an agreement for redemption; that the mortgagee, in addition to declining, said that he would try to figure out some plan to settle with mortgagor, asking the latter (witness) to let him have two weeks in which to figure it out, and investigate the value of the land. Ivy testified further that he waited for two or three weeks and, not hearing from mortgagee respondent, wrote him another letter; that it was six or eight weeks from the time that complainant was out at the home of respondent, before complainant heard from the respondent again. Ivy then received a letter, the letter of March 17, 1916, as follows:

"My Dear Sir: In answer to your previous letter will say that I have decided to *make you a present of 200 acres of surface land and 120 acres of coal land, however, this is not the coal land that I got from you, neither is the surface the land I got from you.* Neither do I own the surface over the coal that I am offering you. Now I propose to give you this land provided you accept this proposition at once. If you do not care to accept this proposition, it will not be necessary to see me any further. The titles are all O. K. in the lands I propose to give you. Now if you care to do this please make me a quitclaim deed at once to the lands that I got from you and I will make you a deed to the land that I propose giving you. Yours truly."

On receipt of this letter, complainant employed counsel to file a bill. Complainant further testified *to his ability and willingness* to pay Hood all sums justly due him at the time of his application for redemption, and to the time of the taking of the testimony; and to the fact that he was relying on Hood at all times to call on him for the money due on the mortgages, and that no such demand was ever made.

When this testimony is illumined by re-

spondent's version of the facts, the case is not much improved in the latter's behalf, on the question of estoppel vel non. As a witness he admitted that he made the loan and took the mortgage under which the foreclosure was had, at a time when complainant was a resident of Jackson, Miss.; that he did not thereafter hear from the mortgagor until after the foreclosure, though he tried to notify him of the mortgage being due and of his (mortgagee's) desire for payment; that the letter was returned undelivered; and that the land had been previously sold for taxes. The letter, dated October 12, 1911, was as follows:

"Your papers with me are long past due and the land securing this debt has sold for its taxes and unless I hear from you at once I will proceed to foreclose the mortgage. Let me hear from you by return mail."

Respondent further testified that after his foreclosure he notified the tax collector thereof, and supposed that Ivy knew of the foreclosure. He admitted that Ivy wrote to him concerning the tax sale, and inquiring if witness had bought the lands in at such sale, and that witness replied, admitting that he had done so; that, when the redemption from the tax sale was effected, the time for redemption under the mortgage had not expired; that thereafter Ivy made application to witness to borrow $500. Witness stated the circumstances of this loan as follows:

"I just loaned him the money after consulting the attorneys. * * * I asked them about it, and showed them a letter I had from Mr. Ivy wanting $500 on the land, and he had a right of redemption, and I wanted to know if it would be all right for me to do it. They said it would, if the land was worth the money. *I had in my mind, when he wanted to borrow the money, that he intended to redeem it. He didn't say anything about it, but that is what I thought.*"

It was not denied that during the time of this negotiation for the $500 loan, after the foreclosure or the redemption from tax sale, the former mortgage was not mentioned by either party; that it was long past due, and no payments thereon had been made; that since redemption Hood had paid the taxes on the land; nor that Ivy had never offered to pay Hood the taxes so paid by the latter since the foreclosure.

Witness' explanation of the foregoing correspondence was that the letters (except letters indicated) were written by his son; that witness did not know whether he had read them or not, but he did not guess he had read them over; that the letter of date August 26th was written by his son; that witness *did not remember telling his son to write complainant that he might have as long as he wanted in which to redeem from the tax sale;* and that witness never authorized him to say, in the letter of date March 18th, "that payment might be made at any time." Witness was asked if he remembered what he instructed his son to do, as to sending the mortgage to Ivy, and replied:

"My recollection is that I just told him [witness' son] that I could make him the loan and to fill out the mortgage himself and put the number of the lands in it, and send it to him [Ivy] to sign and send it back and I would lend him the money."

The witness admitted having received the money paid by Ivy to the probate judge, in redemption from the tax sale, a short while after the same was paid to that official; that the tax assessor informed him Ivy was assessing the lands for taxes after the foreclosure; but witness did not explain his failure to account to Ivy, after payment of the mortgage debt, for the balance of the purchase money in his hands, after foreclosure.

The son was not examined as a witness, nor was his absence accounted for.

The tax assessor of that county testified that since 1900, up to and including 1915, Ivy had assessed the land for taxes continuously, and that for 1916 and 1917 respondent also assessed the same. This witness also testified that he was familiar with the fair and reasonable cash market value of the land in question; that the coal was worth $50 per acre; that both Hood and Ivy assessed said land at $20 per acre—which meant, according to the rules of assessment of real estate for taxes in relation to its actual market value, that at the time of assessment the land was valued by them at a little more than $30 per acre.

In permitting Ivy to redeem the land, no injury or injustice will be done to the mortgagee, for Ivy offered in his pleading and in his testimony to pay the debt with interest and all lawful charges—all such sums as the court should find to be justly due respondent. In requiring respondent to submit to redemption in equity, the decree is only compelling him to carry out the course of his business as originally contemplated by the parties, as evidenced by this record. This is adverted to only incidentally, as the preponderance of the evidence, under the principles declared in authorities we have collected, as well as the dictates of common justice and the law of the case, required the intervention of a court of equity to protect complainant against the insistence of respondent, of purchase at foreclosure sale, and of expiration of the statutory right of redemption, based upon the circumstances detailed in this record—which insistence cannot be countenanced by this court.

[10] The offer in complainant's bill to pay the full amount due upon said mortgage liens, together with legal interest and all lawful charges thereon, with the further averment that he was "ready, willing, and able to pay said sums to respondent, but that respondent declined and refused to accept said payment and stated to your orator that he would not accept the payment of said sums of money, and claimed to own the property involved, in his own right, and your orator alleges that he is still willing, able, and ready to pay the amount of said indebtedness and offers to pay the same in full into this honorable court upon due ascertainment of the amount really due, either by your honor or by the register of this court upon a reference to him," was sufficient as an offer, under the circumstances of the case, to redeem in equity.

The bill as amended, under the issues made by the cross-bill and the answer thereto, was not one for redemption under the statute. It was to have the foreclosure canceled on the ground of the estopping conduct of respondent, and on the offer of complainant to do equity and to pay to respondent all sums that might be found by the court to be justly due him under said mortgages. A court of equity not only has the original jurisdiction to grant such relief, but delights in its proper exercise.

There is here no conflict with the announcement in Wittmeier v. Cranford, 73 South. 981,[8] where the Chief Justice limited his statement touching the defects of the bill as to tender by saying that:

"To redeem *under the statute*, it was defective, as it did not show a tender of the purchase money or an excuse for not doing so as provided by section 5748 of the Code of 1907."

Likewise Judge McClellan, in Beatty v. Brown, 101 Ala. 695, 14 South. 368, points to the necessity of such a tender as obtaining only when the effort is to "effectuate a mortgagor's *statutory right* of redemption," and not when it is to "effectuate the *equity* of redemption."

The decree is reversed, and the cause is remanded for the ascertainment of the amounts respectively due respondent on the two mortgages.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.