# Corry *v.* Sylvia Y Cia.

*Deceit in a Sale.*

(Decided April 23, 1915. 68 South. 891.)

1. *Frauds; Silence; Encumbrance.*—One who sold a ship and the freight on her then voyage, but two weeks previously thereto he had drawn a disbursement note for an amount less than the total amount of the freight, which he had made a lien against the ship as well as the freight, was guilty of actionable fraud in not informing the buyer of the existence of the draft of which the buyer had no means of acquiring knowledge.

[Corry v. Sylvia Y Cia.]

2. *Appeal and Error; Harmless Error; Instructions.*—Where the verdict shows that only actual damages were awarded, the giving of instructions authorizing the allowance of punitive damages is not prejudicial error.

3. *Fraud; Draft; Evidence; Possession.*—Where a defendant sold a ship and its freight to plaintiff without informing the plaintiff of an outstanding disbursement draft which was made a lien upon the freight and the ship, the possession of the draft by an agent of the plaintiff was prima facie evidence that plaintiff had paid the draft, the action being for deceit, in the sale of the ship and its freight.

4. *Same; Remedy of Buyer; Evidence.*—Where the action was for deceit in the sale of a ship and its freight because encumbered by a disbursement draft, evidence that the draft was never presented for payment to the bank to which it was first endorsed, and by which it was endorsed to another, and that the next time the cashier saw it, it was in the hands of plaintiff's attorney, was admissible as tending to show that plaintiff had paid the draft; nor was it objectionable as not being the best evidence of the payment of the draft.

5. *Evidence; Documentary; Letter; Presumption of Delivery.*—Since the court judicially knows that iron letter boxes are maintained on street corners by the government, and it will presume that the letter was duly delivered to defendant just as if it had been deposited in the postoffice, a letter which a witness testified he mailed to defendant by dropping into such mail box is admissible.

6. *Same; Telegrams; Presumption.*—The delivery of a properly addressed message to a telegraph company for transmission raises the presumption that it was received in due course by the addressee.

7. *Appeal and Error; Harmless Error; Evidence.*—Where the question was never answered by the witness, any error in overruling objections to such questions is rendered harmless.

8. *Evidence; Cablegram; Silence.*—Where a witness testified to sending a cablegram to defendant, which was followed up by a letter stating that he had sent the message, his testimony that he had never been notified that the message was not received, was relevant as tending to show an admission by defendant of its receipt.

9. *Fraud; Pleading.*—A count for deceit in the form prescribed by the Code (subdivision 21, section 5382, Code 1907) except that it did not allege defendant's knowledge of the falsity, is nevertheless sufficient where there is a legal implication of such knowledge from the facts pleaded.

10. *Same.*—Under such a count, the burden is on plaintiff to prove every element of actionable deceit.

11. *Same.*—There being no abbreviated Code forms for pleading in chancery matters, all the elements of actionable deceit must be therein alleged.

12. *Appeal and Error; Harmless Error; Pleading.*—Where all the matters pleaded specially were available to defendant under his plea of the general issue, error in sustaining demurrers to the special plea is harmless.

13. *Sale; Warranty; Implied.*—A bill of sale conveying a ship and her freight and expressly warranting the ship free from encumbrance,

[Corry v. Sylvia Y Cia.]

does not thereby exclude an implied warranty that the freight was also unencumbered.

14. *Fraud; Concealment.*—An express warranty in a bill of sale conveying a ship and her freight that the ship is unencumbered, will not defeat liability for an implied misrepresentation by concealment of the fact that the freight was encumbered.

15. *Same; Variance.*—Where the action was for deceit in the sale of a ship and her freight, the allegation that defendant had sold the freight to another before selling it to plaintiff, is supported by proof that defendant had assigned the freight as security for a disbursement draft for practically the entire amount of the freight due.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action by Sylvia y Cia against Joseph W. Corry for deceit in the sale of a ship and the freight to be earned by her on her then voyage. Judgment for plaintiff, and defendant appeals. Affirmed.

The case was tried on counts 3, 4, 5, 6, and 7 as amended, and the plea of the general issue. Demurrers to the seventh and ninth counts were overruled, and demurrers to all of defendant's special pleas, except plea H, were sustained, and these rulings are severally assigned as error.

Count 7 is as follows: "Plaintiff claims of defendant the further sum of $25,000 for deceit in the sale of a ship or vessel and the freight accruing upon the voyage of said ship or vessel, upon which freight defendant had at the time of said sale caused to be drawn by the master of said ship and indorsed to another a disbursement note or draft for £3,853. 1 s. 10 d. sterling, by which said draft or note there was pledged for the payment thereof said ship and her freight, and there was assigned to the holder thereof all of the lien and claims against the freight, vessel, and owners which the master of said ship had, with the power to take in his name all steps necessary to enforce the same, and by which said note or draft the consignees at the port

of discharge were instructed to pay said draft and deduct the amount thereof from the freights due said vessel, and it was provided that in case of non-payment the holder should also be entitled to the benefit of all liens in law, equity, or admiralty which the master or owners of the vessel were entitled to against any part of the cargo or its owners for freight, compress, or other charges on the vessel or master at the port of loading, and that said claim should have priority over all others that might be presented against said freight and vessel."

Count 9: "Plaintiff claims of the defendant the further sum of * * * damages for that * * * on the 12th day of July, 1913, defendant sold to plaintiff for the sum of $33,810 a ship named Hermanos, and the freight then accruing on the then outward voyage, and the defendant fraudulently concealed from the plaintiff the fact that the defendant had caused a disbursement note or draft for £3,853. 1 s. 10 d. sterling to be drawn by the master of the ship payable to his own order and indorsed to another, by which said note or draft there was pledged for the payment thereof said ship and her freight, and there was assigned to the holder thereof all of the liens and claims against the freight, vessel, and owners which the master of the ship had, with the power to take in his name all steps necessary to enforce the same, and by which said note or draft the consignees at the port of discharge were instructed to pay said draft, and deduct the amount thereof from the freight due said vessel, and it was provided that in case of nonpayment the holder should also be entitled to the benefit of all liens in law, equity, and admiralty which the master or the owners of the said vessel were entitled to against any part of the cargo or its owners for freight, compress,

or other charges on the vessel or the master at the port of loading, and said claim should have priority over all others that might be presented against said ship or freight. And plaintiff believed that the defendant had the right to sell them said entire freight of about $18,-000, and upon said belief paid him said sum of $33,810, agreed 'on as the purchase price of said vessel and freight, all to plaintiff's damage in the sum of $25,000."

Plaintiff's evidence tended to show that defendant represented to plaintiff that all debts against the ship had been paid, and that defendant never at any time informed plaintiff of the existence of the disbursement note or draft by which the ship's freight was assigned to the holder, and the ship herself pledged for its payment, and that plaintiff had no knowledge or notice of such a transaction. Defendant's evidence, on the other hand, tended to show that he had informed plaintiff of the draft and debts prior to the consummation of the sale. The bill of sale, dated July 12, 1913, after describing the ship Hermanos, contains the following: "To have and to hold the said vessel unto the said Sylvia y Cia., their executors, administrators, and assigns to their own proper use and benefit forever. And I, the said Joseph W. Corry, do avow myself to be the lawful and true owner of 65 shares in the Norwegian ship Hermanos, that I have full power, good right, and lawful authority to dispose of said vessel in the manner aforesaid, and that I will warrant and defend the same against the lawful claim and demands of all persons whomsoever. I, Joseph W. Corry, do further warrant that the said ship Hermanos is free of all debt and incumbrances up to and the crossing of the Pensacola, Fla., outer bay bar on this her present voyage cargo laden for Rio de Janeiro, S. A. The freight accruing to the ship Hermanos on this, her present outward voy-

age, is made a part of this sale, and I, Joseph W. Corry, do transfer in its entirety, amounting to about $18,-000, to Sylvia y Cia., together with marine insurance," etc.

The disbursement draft drawn by the ship's master on June 30, 1913, with the knowledge and approval of defendant, is as follows: "Ten days after arrival (or upon collection of the freight if sooner made) of the Norwegian barque Hermanos under command at the port of Rio de Janeiro or any other place at which her voyage may terminate, I promise to pay to the order of myself the sum of £3,853. 1s. 10d. sterling, in approved banker's demand bills on London, for value received, for necessary disbursements owed by me and my vessel at this port, for the payment of which I hereby pledge my vessel and her freight, and I hereby assign, to the legal holder of this obligation all my lien and claim against freight, vessel and owners, with power to take in my name all and any necessary ships to enforce the same; and my consignees at port of discharge are hereby instructed to pay this obligation and deduct the amount thereof from the freight due said vessel. In case of nonpayment the holder shall also be entitled to the benefit of all liens in law, equity, or admirality which the master or owner of said vessel may be entitled to against any part of the cargo or owners for freight, compress or other charges on cargo paid by the vessel or master at port of loading. This claim to have priority of payment over all others that may be presented against said freight and vessel. My vessel is now lying at the port of Pensacola, loaded with lumber and ready to sail for Rio de Janeiro. Signed in triplicate; one being accomplished, the others to stand void."

The court's oral charge was in part as follows: "Now gentlemen of the jury, when a person sells another per-

son personal property without disclosing any want of power or right to make the sale, and without putting the other party upon inquiry with regard thereto, he impliedly represents that he has the power and right to sell the property, and if you find from the evidence that defendant sold to plaintiff the ship Hermanos, and the entire freight accruing to the ship on her outward voyage, without giving the notice or disclosing to them that a disbursement note or draft had been given upon the freight sufficient to consume all or nearly all of such freight, and that by such note the freight and the ship were pledged to the payment thereof, and that defendant knew at the time he made the sale that such note or draft had been given, and if you further believe from the evidence that plaintiff could not know or had no notice that such disbursement note or draft had been given, and was induced by an implied representation of defendant that he had the right and power to sell and dispose of the outward freight, then defendant was guilty of a deceit with regard to the sale of the freight; and if you further believe from the evidence that defendant further represented that the ship was free from incumbrances, when, in fact, such disbursement note or draft had been given, and that plaintiff did not know of it, and was induced by the representations of defendant that the vessel was free of incumbrances to make such purchase, then defendant was guilty of deceit in the sale of the vessel also; and if defendant was guilty of such deceit with reference to the freight and ship, and plaintiff was by such deceit induced to purchase said ship (through the purchase of all the shares of stock of the owners thereof,) together with the outward bound freight accruing upon the ship, and were damaged thereby, you ought to find a verdict for plaintiff for such an amount or damages as it actually sustained,

[Corry v. Sylvia Y Cia.]

and you would be justified in adding to such damages such sum as you think proper, based upon the evidence to punish defendant for the deceit perpetrated by him."

The following is charge 3 given for plaintiff: "If the jury believe from the evidence that defendant on or about July 12, 1913, induced plaintiff to pay him $33,810 for 65 shares of stock in the Norwegian sailing ship, Hermanos, and the entire freight to said ship on her then outward voyage to Rio de Janeiro, by representing to plaintiff that such freights amounted to $18,800, and that the ship was free of incumbrances, without disclosing to them that a draft had been drawn against such freight although defendant knew that a draft had already been drawn by the master of said ship against said freight for £3,853. 1 s. 10 d. sterling, and that this was equivalent to more than $18,000 American money, and that said master had pledged the freight of the vessel on said voyage for the payment of said draft, and that defendant had no knowledge of said draft, and if the jury further believe from the evidence that said the interest theron, and the draft was paid out of such freight, then the jury ought to find a verdict for plaintiff for such damages as it actually sustained by such deceit, with the interest thereon, and the jury would be authorized to assess against defendant such punitive damages as they may think proper under the evidence, in addition to the actual damages that plaintiff sustained."

The defendant requested the general affirmative charge on the whole case and each count thereof and several special charges which were refused.

HANAW & PILLANS, and J. A. LEATHERS, for appellant.

GREGORY L. & H. T. SMITH, and HANUN GARDNER, for appellee.

SOMERVILLE, J.—This case was tried and determined in the lower court upon the theory that, under the circumstances here exhibited it was the duty of the defendant vendor to inform the plaintiff vendee, at or before the consummation of the sale, that he had previously made an assignment of the ship's freight to the holder of the disbursement draft, and that the defendant's silence in that regard knowing that the plaintiff was ignorant of such assignment, was a fraud upon the plaintiff, and amounted to an actionable deceit. The price paid for the ship, including the freight, was $33,-810. The value of the freight was $18,800, and was known to both parties. The disbursement draft and assignment was for approximately $18,500. The head of the plaintiff firm is a Brazilian who does not speak English, and the negotiations were conducted by him through his son, with whom he was temporarily residing at Gulfport, Miss.

(1) In every sale of personal property in the possession of the vendor, the vendee not being informed to the contrary, and means of knowledge not being open to him, the vendor must be understood as representing to the vendee that, so far as he then knows, he is the owner of the property, that he has a right to sell it, and that he has not incumbered it with any superior claim in favor of a third person. This is not only sound in morals, but it is equally sound in logic and in law. It results inevitably from the duty of disclosure under such circumstances, and is we think, deducible from the best considered authorities.

"While it may be more difficult to define, with clearness and precision, the distinction between suppression

and falsehood, as constituting actual fraud, it may be
said, generally, that silence, in order to be an actionable
fraud, must relate to a material matter known to the
party, and which it is his legal duty to communicate to
the other contracting party, whether the duty arises
from a relation of trust, from confidence, inequality of
condition and knowledge, or other attendant circum-
stances. Though a concealment may be tantamount to
a misrepresentation, and equally effective to deceive or
mislead, every omission to disclose facts, though ma-
terial, is not necessarily fraudulent. The rule best
adapted to the proper conduct of business transactions
lies between the two extremes—the rule of the civil law,
which requires the seller to disclose every defect known
to him that effects the merits of the contract, or which
the purchaser is interested in knowing; and the rule
adopted in some cases that it is incumbent on the pur-
chaser, if he does not take a warranty, to ask for in-
formation, and that he cannot complain of a failure to
communicate facts which he could have learned by in-
quiry."—*Jordan v. Pickett,* 78 Ala. 331, 338.

Quoting further from the same authority: "Though
the intention (to defraud) is a question for the jury;
where the fact and its materiality are known to the
seller, and the suppression is willful or intentional, it
may be regarded as done with an intention to deceive
or mislead, and the purchaser, not having equal access
of information, may be regarded as defrauded."

In one of our early cases it was said:

"But the law is not so destitute of morality as not
to require each of the contracting parties to disclose to
the other all material facts of which he has knowledge,
and of which he knows the other to be ignorant, unless
they are open to common observation, and not to for-
bid any intentional concealment or suppression of the

material facts necessary to be known, and to which the other has not equal access or means of ascertaining." —*Camp v. Camp*, 2 Ala. 632, 636 (36 Am. Dec. 423).

So in another case it was said: "Where a vendor professes to be able to make a clear title in fee, either by a direct assertion to that effect, or, while he offers to make such a title by concealing the fact of his inability to do so, his conduct cannot be otherwise than fraudulent. It cannot be reconciled with fair dealing, because he knows at the time that disclosure of the truth of the case would prevent the sale, and therefore in such a case, if the purchaser is not chargeable with negligence, the contract may be rescinded by him even before an eviction."—*Steele v. Kinkle*, 3 Ala. 352, 356.

"The implication when property is placed in the hands of a * * * broker for sale, is that the owner has a good title thereto, and that the purchaser can get the property unincumbered. * * * The inducement to buy is that the purchaser may acquire a good and indefeasible title."—*Birmingham I. & L. C. v. Thompson*, 86 Ala. 146, 5 South. 473.

Commenting on the duty of contractors in general, Mr. Parsons has justly observed that: "Although one may have a right to be silent under ordinary circumstances, there are many cases in which the very propositions of a party imply that certain things, if not told, do not exist."—2 Pars. Contr. § 777.

And he adds: 'In these cases, and in others which come within this principle, the suppressio veri has the same effect in law as the expressio falsi."

Judge Cooley notes that there are cases "in which silence is fraudulent, because the silence amounts to an affirmation that a state of things exists which does not, and the party is deprived to the same extent that he

would have been by positive assertion."—2 Cooley on Torts (3d Ed.) 912 (559).

The foregoing authorities state the general rule with respect to the vice of concealment by contracting parties in general. With respect to vendors and defects of title known to themselves, this court long ago adopted the rule as stated in Sugden on Vendors, c. 9, p. 564, viz: "Although the purchase money has been paid, and the conveyance is executed by all the parties, yet, if the defect does not appear on the face of the title deeds, and the vendor was aware of the defect, and concealed it from the purchaser, * * * he is in every such case guilty of fraud, and the purchaser may either bring an action on the case, or file his bill in equity for relief."—*Bryant's Ex'r. v. Boothe,* 30 Ala. 311, 315, 68 Am. Dec. 117; *Cullum v. Br. Bank.* 4 Ala. 21, 35, 37 Am. Dec. 725.

It is hardly necessary to note that this rule does not apply to sales of real estate by quitclaim merely.

In *Cullum v. Bank, supra,* it was said: "In all cases of purchase there is a trust and confidence by the purchaser in the vendor that the estate is not impaired in value or incumbered by any act done by him. Indeed, by offering to sell an estate the vendor virtually represents it as not incumbered by himself, or, if incumbered, he will free it before the sale is executed; and, if he wishes to discharge himself from the consequences of this implied representation, it lies with him to show that the purchaser was informed or otherwise knew of the incumbrance."

In the development of this rule that a failure to disclose is per se fraudulent a clear distinction is recognized between incumbrances and defects in general and such as have been knowingly created or suffered by the vendor himself.

In the case of *Morgan v. Patrick*, 7 Ala. 185, which is directly in point, the defendant suffered a judgment lien to be fastened on his land in another state, and afterwards sold it to the plaintiffs without informing them of the incumbrance. Said the court: "In this case, according to the facts agreed upon, the defendant sold to the plaintiffs a tract of land, knowing at the time it was incumbered by a judgment of which the purchasers were ignorant. There is no question but that this was a fraud upon the purchasers for which they had a remedy, although there might be no covenants of general warranty or against incumbrances."

See, also, the case of *Van Arsdale v. Howard*, 5 Ala. 596, for a clear discussion of the general rule.

In the instant case the defendant had made a written assignment of the freight earnings of his ship just two weeks before he executed the bill of sale to the plaintiff. It was fresh in his mind and memory, and he knew that he had no right to sell the freight to the defendant as long as that assignment stood, and that in the natural course of events it would be lost to the plaintiff by reason of that assignment. He was bound to know also that, whatever the value of the ship might be, $18,000 of freight was a vital part of the consideration moving to the plaintiff, and that the plaintiff expected to become the owner of it in actual substance, and not merely in empty form.

Under these circumstances, the trial court did not err in instructing the jury that, if the defendant failed to disclose to the plaintiff the existence of the draft and assignment, and the plaintiff was ignorant of their existence, and this draft was actually paid by the plaintiff out of the freight, then the plaintiff was entitled to recover the damages sustained.

[Corry v. Sylvia Y Cia.]

(2) Two of the written charges embodying this proposition authorized the jury, in their discretion, to award punitive damages also. The validity of this part of the charge need not, however, be considered, since the verdict shows quite clearly that only actual damages were awarded.

(3) "When a draft is drawn by one person upon and payable out of a particular fund derived from freight to be collected by another, the production by such other person of the draft after the date when it was payable raises the presumption that it has been paid out of such fund." The above-quoted instruction was given to the jury by the trial judge, and, as applied to the evidence, we think it was clearly correct. It is, of course, immaterial whether this draft was paid out of the freight due to the plaintiff's ship or out of general funds. It was a valid charge upon the ship as well as the freight, and its possession by the maker or any one succeeding to his rights in this property was prima facie evidence of its payment by the possessor to the person entitled to receive payment.—*Potts v. Coleman,* 67 Ala. 221; *Hill v. Gayle,* 1 Ala. 175. In this case the possession of the draft by the plaintiff's agent, Gardner, who was not personally interested therein, was prima facie the possession of the plaintiff, his principal. We do not think it is of any importance whether the instrument be called a draft or a note. Its function was the same in either case. Very clearly, if the defendant furnished funds for its payment, the burden is upon him to show it.

(4) The first actual holder and payee of this draft was the First National Bank of Gulfport, by whom it was regularly indorsed to a Liverpool firm. The fact that no one had ever demanded payment from the bank, and that the bank had not paid the draft, was some

evidence, however slight, confirmatory of the plaintiff's claim of payment by himself. For the same purpose it was proper for the plaintiff to show by the cashier of this bank that when he next saw this draft it was in the possession of one Gardner, the plaintiff's attorney.

(5) Moreover, the only ground of objection to either of these items of evidence—that it was not the best evidence of the payment of the draft—was wholly inapt. The objections were properly overruled.

(6) The plaintiff's witness Sylvia, Jr., testified that he mailed a certain letter material to the case to the defendant. The letter was mailed by dropping it in an iron mail box on a street corner in New York City, and was properly stamped and addressed to the defendant at his place of business—Gulfport, Miss. We judicially know that the federal government provides and maintains iron mail boxes on street corners in cities for the convenient posting of letters, and it will be presumed prima facie that any "iron mail box" thus located is a government box. It will be further presumed that a letter posted therein had been taken up in due course, carried to a government post office, and duly sent upon its way. In such a case, therefore, the ultimate delivery of the letter to the addressee will be presumed just as if it had been mailed in the post office itself.—*Casko Nat. Bank v. Shaw,* 79 Me. 376, 10 Atl. 67, I. Am. St. Rep. 319; *McCoy v. New York,* 6 Hun (N. Y.) 268. The motion to exclude this letter was properly overruled.

(7) So the delivery of a message to a telegraph company for transmission properly addressed raises a presumption prima facie that it was received in due course by the addressee.—*Oregon S. S. Co. v. Otis,* 100 N. Y. 446, 3 N. E. 485, 53 Am. Rep. 221; *Eppinger v.*

*Scott*, 112 Cal. 369, 42 Pac. 301, 44 Pac. 723, 53 Am. St. Rep. 220; 16 Cyc. 1071.

(8) After testifying that he had sent a cable message from Lisbon, Portugal, to the defendant at Gulfport, Miss., the plaintiff's witness Sylvia, Jr., was asked whether he had ever been notified that it was not received. The defendant's objection to this question was overruled, but it does not appear that the question was answered, and hence the error, if any, was harmless.

(9) In view of the fact, however, that the plaintiff had written a letter to the defendant informing him of the sending of the cablegram, the answer to the question would have been relevant evidence tending, if in the negative, to show an admission by the defendant that he had received the cablegram.

It remains only to consider whether there was any erroneous ruling with respect to the pleadings, and, if so, whether it was prejudicial to the defendant.

(10-12) Under the code form for an action for deceit in the sale of chattels, it is sufficient for the plaintiff to claim damages in a certain sum for deceit in any specified sale, with an allegation merely that the defendant knew of the defect misrepresented at the time of the sale.—Civil Code, p. 1198, § 21. Count 7 is in code form, and not subject to any of the grounds of demurrer. True, it contains no allegation of defendant's scienter, but its existence is a necessary legal implication from the facts alleged. Under this count the burden was upon plaintiff to prove every element of an actionable deceit as defined by law. It is, of course, to be noted that in chancery pleading, for which no abbreviated code form is provided, all the elements of actionable deceit must be severally alleged.—*King v. Livingston Mfg. Co.*, 180 Ala. 118, 60 South. 143.

The objection to count 9, as noted in appellant's argument, is that no affirmative or active deception is alleged, and no facts are alleged showing defendant's duty to inform plaintiff of defendant's previous assignment of the freight. Under the principles heretofore stated, the facts alleged in this count unquestionably show a breach of defendant's duty in the particular named, and the objection urged is without merit.

(13) Defendant filed a number of special pleas, to all of which, with a single exception, demurrers were sustained. All of the matters thus specially pleaded were, so far as relevant, available to defendant under his plea of the general issue, and there was no need in this case, if, indeed, there can ever be such a thing as the confession and avoidance of an actionable deceit, for special pleading. There was no prejudicial error with respect to these pleas.

(1, 15) The fact is stressed by defendant, in pleading and in argument, that there was in the bill of sale an express warranty of title to the ship, and silence as to the title to the freight; and hence, it is urged, the implication of a warranty as to the freight is rebutted. The authority relied on is *Barnes v. Blair*, 16 Ala. 71. In that case a bill of sale described the slave sold as "sound and healthy; the title to the same I fully guarantee;" and it was held that the representation of condition was not intended as a warranty, and would not support an action in assumpsit. This decision has never been cited in later cases, and seems to be opposed to the generally accepted rule that an express warranty of a chattel in one particular does not exclude an implied warranty as to another and different particular. —35 Cyc. 392, 393. But, however, this may be, the rule does not apply to wholly distinct chattels, as in this case. And, moreover, we are dealing here with an im-

[Corry v. Sylvia Y Cia.]

plied representation of fact and a concealment, and not with an asserted warranty.

(16) It is insisted also that the allegations of some of the counts of the complaint that defendant had sold the freight, are not supported by proof that defendant had assigned the freight as security for the payment of the disbursement note or draft, and that, as to those counts, defendant was entitled to the general affirmative charge. It is certinly true that the conditional assignment of this freight was not technically a sale, as that term is most narrowly defined by the law. Nevertheless, in a general sense, and for all the purposes of this case, the conditional assignment shown is the equivalent of a technical sale, and sufficiently supports the complaint. The distinction urged as a variance is too technical and too unsubstantial to merit judicial recognition.

We have examined all the questions presented by the assignments of error, and we are of the opinion that there was a fair trial of the issues of fact in accordance with the principles of law that govern the case, and that no error was committed by the trial court which was prejudicial to appellant.

Let the judgment be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.