(101 So. 837)

**SNODGRASS et al. v. SNODGRASS.**

**(8 Div. 568.)**

(Supreme Court of Alabama. Oct. 23, 1924.)

1. **Appeal and error** &#9758;5 — **Decree in equity not reviewable by Supreme Court, on motion or petition in nature of writ of error coram nobis or writ of error coram vobis.**

The Supreme Court will not review the decree rendered in action in equity for reformation of deeds, on motion or petition in the nature of the common-law writ of error coram nobis or coram vobis, under Const. § 140 (citing 8 Words and Phrases, "Writ of Error").

2. **Parties** &#9758;7(1)—**Owner of real estate necessary party to suit, where decree affects ownership and title.**

Owner of real property must be a party to a suit in which final decree affects ownership and title.

**3. Appeal and error ⬵⟹792—Notice of absence of necessary party taken by Supreme Court ex mero motu.**

Notice of absence of necessary party may be taken by Supreme Court ex mero motu.

**4. Boundaries ⬵⟹32—Proof must be confined to allegata, where subject of litigation is real property.**

When subject of litigation is real property, the proof must be confined to the allegata, especially when controversy involves establishment of disputed boundary in chancery.

**5. Equity ⬵⟹427(1)—Decree of reformation cannot affect property not embraced in pleading.**

Under Code 1907, § 3052, subd. 5, as amended by Acts 1923, p. 764, decree of reformation of deeds confirming parol partition cannot affect property not embraced in pleading.

**6. Boundaries ⬵⟹3(1) — Calls prevail over inconsistent description of area.**

Calls of deed, such as references to geographical and physical boundaries and government surveys, etc., prevail over inconsistent description of area.

**7. Boundaries ⬵⟹25—Lines of elder survey generally prevail over inconsistent later survey.**

Where lines of several surveys conflict, the lines of the elder survey will generally be made to prevail.

**8. Boundaries ⬵⟹47(1)—Tenant in common held estopped to deny that boundary pursuant to parol partition, before selection of allotment and payment of owelty by cotenant, was true line.**

Tenant in common, who made allotment and fixed amount of owelty of partition on partition of land, and who permitted cotenant to exercise right of election and to pay owelty without disclosing that the boundary he had pointed out was not in fact the true boundary, will be estopped to deny that the line so designated was not the true boundary, regardless of whether he intended to mislead cotenant in indicating boundary.

Appeal from Circuit Court, Jackson County; W. W. Haralson, Judge.

Bill in equity by W. E. Snodgrass against J. D. Snodgrass (revived in name of Texas Snodgrass and others as complainants). From the decree, complainants appeal. Reversed and remanded.

David A. Grayson, of Huntsville, and Ernest Parks, of Scottsboro, for appellants.

Reformation may be had where there has been a mutual mistake and the agreement does not express the intention of the parties. Hammer v. Lange, 174 Ala. 337, 56 So. 573; Hathaway v. Carnley, 198 Ala. 39, 73 So. 382; Hand v. Cox, 164 Ala. 348, 51 So. 519. Unless land is described in the pleading, the court has no jurisdiction over it. N., C. &

St. L. v. Hobbs, 120 Ala. 600, 24 So. 933. Where a person has acted or refrained from acting on the advice or request of another, the latter is estopped to take any position inconsistent with his own advice or request. 21 C. J. 1204; Goetter v. Norman Bros., 107 Ala. 585, 19 So. 56. Vague or repugnant calls in a description may be rejected or controlled by others consistent and certain. 5 Cyc. 912; Chandler v. Green, 69 Me. 350; Taylor v. Formby, 116 Ala. 621, 22 So. 910, 67 Am. St. Rep. 149. The lines of an elder survey will prevail over those of a junior. 5 Cyc. 930.

D. P. Wimberly, of Scottsboro, for appellee.

Counsel argues the questions raised, but without citing authorities.

THOMAS, J. The submission is on motion and on merits.

[1] At the time of filing the transcript, motion or petition in the nature of the common-law writ of error coram nobis, or coram vobis, was also filed. Authority for the petition is urged under provisions of section 140 of the Constitution. That section of the organic law is without application to the procedure sought by the motion. The writ of coram nobis, or coram vobis, as it is sometimes indiscriminately called, was recognized to be of force in this jurisdiction, in Holford v. Alexander, 12 Ala. 280, 46 Am. Dec. 253. It was there held the writ can be prosecuted only by one who was a party of privity of record or injured by the judgment, and that any fact which was put in issue and adjudicated upon the trial will not be reconsidered, and it must be directed to the court rendering the judgment. 23 Cyc. p. 883, D; 9 Cyc. p. 976; 8 Words and Phrases, 7838; 2 R. C. L. p. 305 et seq.; 1 Arch. C. Pr. K. B. 234; annotations of Corpus Juris and Cyc. 1921, p. 1592. However, it has been said that this writ is strictly a common-law writ, and has no place in chancery procedure. Bradford v. White, 130 Ark. 532, 197 S. W. 1175, L. R. A. 1918A, 1177; Reid's Adm'r v. Strider's Adm'r, 7 Grat. (Va.) 76, 54 Am. Dec. 120. It is sufficient to say that no relief can be granted under said motion or petition. Without binding the court in the premises the petitioners may find their remedy in a bill of review (Code, § 3178; Willis v. Rice, 157 Ala. 252, 48 So. 397, 131 Am. St. Rep. 55; Gill v. More, 200 Ala. 511, 76 So. 453), or in an original bill in the nature of a bill of review. Sims v. Riggins, 201 Ala. 99, 77 So. 393; Graves v. Brittingham, 209 Ala. 147, 95 So. 542.

The original bill, by W. E. Snodgrass against J. D. Snodgrass, was for reformation of deeds confirming a parol partition of

⬵⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

lands between said parties as tenants in common, and to enjoin ejectment. The answer thereto was made a cross-bill, for the purpose of establishment of a disputed boundary line between the lands of the respective parties, who were brothers and sole heirs at law of J. Thomas Snodgrass, deceased, and as such were tenants in common in the lands which the said J. Thomas Snodgrass possessed at the time of his death. It is averred in the bill that the respective grantees went into the physical possession of their respective allotments some months prior to the date "when the deeds were executed and delivered," and that complainant has since been in the actual occupancy and possession of the land delivered to him pursuant to the partition agreement.

In Betts v. Ward, 196 Ala. 248, 72 So. 110, it was held that, where tenants in common have parol partition of their lands (held jointly), and in consummation thereof there is delivered and taken the exclusive possession of the lots or tracts so set apart to such person by the parol agreement, such parties to the executed agreement, or their successors in title vitiating the same, are estopped to repudiate (in the absence of fraud) the agreement, and their interest in the lands set apart to the other ceases to exist in equity. The cases are collected in Betts v. Ward, supra, touching parol agreements and "family settlements." It is held that such partitions are favored by the courts, and, when consummated by the change of possession pursuant thereto, they will be enforced as to formal conveyance, though the bar of the statute of limitation may not have elapsed in favor of such party asserting his title or right under the partition.

The authorities touching reformation of conveyances are agreed that (1) where a mutual mistake is made though there was a meeting of the minds of the parties, and the instrument as written does not express that which the parties agreed upon, or (2) where there has been a mistake of one of the parties, accompanied by fraud or other inequitable conduct of the other, reformation may be had in a court of equity, that is, to require by decree that the conveyances conform to the arrangement or agreement entered into according to the true intention of the parties, or that they be freed from the fraud and protected from the inequitable conduct of the other, if carried into the conveyances. Consumers' Coal & Fuel Co. v. Yarbrough, 194 Ala. 482, 488, 69 So. 897; Hammer v. Lange, 174 Ala. 337, 56 So. 573; Booth v. Cornelius, 189 Ala. 44, 66 So. 630; Holland Blow Stave Co. v. Barclay, 193 Ala. 200, 69 So. 118; Stricklin v. Kimbrell, 193 Ala. 211, 69 So. 14; Hampton v. Reichert, 206 Ala. 463, 90 So. 311; Gralapp v. Hill, 205 Ala. 569, 88 So. 665; Hand v. Cox, 164 Ala. 348, 51 So. 519; Guilmartin v. Urquhart, 82 Ala. 570, 1 So. 897; 4 Pom. Eq. Jur. 1376. In Hata-way v. Carnley, 198 Ala. 39, 40, 41, 73 So. 382, 383, the declaration is contained that:

"When the parties to a deed select descriptive terms for the conveyance of a designated tract of land, which are insufficient to effect their clear purpose, equity will reform the description so as to effect a conveyance of the land agreed and intended to be conveyed. * * * Unquestionably, complainant bought, and respondent sold, this land simply as a known, visible tract, without regard to its acreage. * * *"

Was that the case in the suit before us?

[2, 3] The questions of fact might have been simplified, if other lands not subject to partition between W. E. and J. D. Snodgrass were eliminated. That the title or ownership of the southeast quarter of the northeast quarter of section 24, township 4, range 6 east, is not the subject of this controversy is attested by its omission from the bill, answer and cross-bill, answer to the cross-bill, and the agreement of counsel contained in the record. Tait v. Am. F. L. Mortg. Co., 132 Ala. 193, 200, 31 So. 623; N. C. & St. L. Ry. v. Hobbs, 120 Ala. 600, 609, 24 So. 933. See, also, Hodge v. Joy, 207 Ala. 198, 92 So. 171; Chandler v. Home Loan Co. (Ala. Sup.) 99 So. 723;[1] Winsett v. Winsett, 203 Ala. 373, 83 So. 117—as to necessary parties. The parcel of land indicated was erroneously carried into the final decree, since it is required that in a suit touching the title to real property the owner thereof must be a party before there may be a due procedure to a final decree that will affect that ownership and title. Lunsford v. Shannon, 208 Ala. 409, 94 So. 571. The failure to bring in a necessary party may be taken by this court ex mero motu. Hodge v. Joy, 207 Ala. 198, 92 So. 171.

[4] When the subject of the litigation is real property, it is important that the proof be confined to the allegata, and without allegation the proof is unavailing. The decree is reversed, to give opportunity to eliminate all lands not held jointly by the parties, and therefore not the subject of a partition. On another trial the inquiry should be confined to the lands and boundaries thereof that W. E. and J. D. Snodgrass owned as tenants in common with J. Thomas Snodgrass, at the time the latter died intestate, leaving as his heirs at law the said W. E. and J. D. Snodgrass. These rules may not be disregarded when the controversy takes the form of establishing a disputed boundary of lands in chancery. In Turner v. De Priest, 205 Ala. 313, 87 So. 370, it is said:

"This court had held that the jurisdiction of courts of equity extended to the establishment of disputed boundaries, and that the jurisdiction is ancient and well defined, but did not extend to every case of disputed boundary, or every case where the boundary has become confused or obliterated, unless some special

[1] 211 Ala. 80.

ground of equitable interposition is shown, predicated on the fraud or neglect of duty of the defendant, whereby the confusion or obliteration has resulted."

[5] In Chappelear v. McWhorter, 204 Ala. 269, 85 So. 386, the observation is made that no question of the title to the land is projected by averments of the pleading. Such is the lack of pleading as to the southeast quarter of the northeast quarter of section 24, township 4, range 6 east, made the subject of the decree appealed from; that is, the decree of reformation, under the instant pleading as to said 40-acre tract, was beyond the purview of section 3052, subd. 5, of the Code, or amendment thereof by General Acts 1923, p. 764. Goodman v. Carroll, 205 Ala. 305, 87 So. 368; Lee v. Dunn, 205 Ala. 689, 89 So. 55; Jasper v. Eddins, 208 Ala. 431, 94 So. 516.

[6] There is much evidence as to whether mutual mistake or estoppel had intervened concerning the west half of the northwest quarter of fractional section 25, township 4, range 6 east, and that portion of the south half of such fractional section lying south and west of a line variously designated in the evidence as extending from a given point on the north bank of the Tennessee river, in a northwesterly direction, along and with an old hedgerow or picket fence, to and by a hackberry tree or trees, to or towards what is called the Gullatt corner, at or about the center of the northwest quarter of said section. Under the rules of law having application to such calls in a conveyance, the calls prevail over an inconsistent description of the area, 57½ acres. Such recitals of area are not sufficient to limit the other definite calls of the deed, such as references to geographical and physical boundaries, and to governmental surveys, etc. The maps in evidence are not convincing that only the limited area of 57½ acres stated in said deed was intended to be conveyed. So, also, the quitclaim deed from Mrs. Snodgrass, when considered with said warranty deed and the preponderance of the evidence, has not that effect, merely quitclaiming, as Mrs. Caroline Snodgrass does, all right, title, and interest in the dower lands, of whatever extent and description.

Of the several surveys in evidence, it should be said that the common starting point is on the north bank of the Tennessee river; that each survey proceeds along the same line, in a northwesterly direction, to some point or marker (at or about the Chestnut corner) on the west line of said fractional section 25, township 4, range 6 east, and that each survey then proceeds north along said section line for largely varying distances, respectively. The survey on which complainant relies ran along the west line of said fractional section 25, and to the northwest corner thereof, thence east along its north line the distance indicated in the warranty deed, 160 poles and 10 links, to a stake, thence south and southeast to the Tennessee river, and thence, with its meanderings, to the point of beginning of the several surveys. The survey of respondent did not extend from the chestnut corner (north) on the west line of fractional section 25 further than, or beyond, the east and west half-section line and proceeded thence in a southeasterly direction to the old hedge or fence row (or near the same) to the north bank of the river, and thence with its meanderings to the common point of beginning. Such surveys confined or sought to confine the area of the dower lands to 57½ acres, and such surveys contained (according to some of the evidence) an excess of that acreage. This survey ignored most positive calls of said warranty deed on the west and on the north lines of said fractional section 25, and did not, in all respects, adhere to the general understanding of said ancient boundary, as shown by phases of the evidence.

As to the calls contained in the warranty deed of John Snodgrass, Sr. (1871), it may be further said that the character X used after each call and pointer is (no doubt) a crude way that was adopted by the scrivener to separate the respective "calls" and "pointers." The "170" in the description, or "S 19 degrees O W 170," was no doubt intended to designate a call for a distance (as was done in the immediate call), without repetition of the word "pole." If such be not the fact, there is an omission of distance in a call or part of the description. Whatever may be the point from where this east line of the land in the northwest corner of the quarter section proceeded, its direction is definite, at or along the quarter-section line and proceeding *south*. The point that survey touched the north bank of the river, and the distance northwest from said river, is also definitely given. Two such definite and converging lines must intersect. The evidence for complainant shows that intersection to have been at the center of the northwest quarter of fractional section 25. The procedure down the old fence or hedgerow to the point on the north bank of the river, and thence up the river to the point of beginning, corresponds in the several surveys and in the evidence. We are convinced that more than a hundred acres were conveyed by Col. Snodgrass' deed and indicated by the Hall survey. As to this, the evidence shows the direction and location of the boundary line from the river, on the east of the dower land (up the river from the starting point), to have been the old hedgerow or fence, hackberry tree, and that it proceeded, according to the ancient line, towards the ridge and in the direction of the Gullatt corner, as pointed out to the commissioners for partition in 1912.

The important questions of fact as to said

lands later held in common by W. E., J. Thomas and J. D. Snodgrass, and, after the death of said J. Thomas Snodgrass, by the parties to this suit, and made the subject of the alleged parol partition between W. E. and J. D. Snodgrass (after the death of J. Thomas), before the execution of their respective conveyances in 1919, are (1) the true line between the south and west boundary of the Swink lands, and the north and east line of the Tom' Snodgrass lands; and (2) what was that dividing line, as agreed upon or authorized to be acted upon by the parties to that partition? Was it upon such understanding or assumption that the delivery of possession of the respective lots of land was made, designated as lot No. 1 and lot No. 2, with the owelty of partition of $500? Lot No. 2 was taken by complainant and the $500 paid defendant. The answers to these questions should not be confused with other lands the Swinks originally entered from the government or may have purchased from others, but should be confined to such Swink lands as were owned by said Snodgrass brothers as tenants in common after the death of J. Thomas Snodgrass, and divided between them.

The lower court gave undue significance to the part of the description in said warranty deed of Col. Snodgrass (1871) stating the area, and thereby depreciated the specific calls of the deed. This is contrary to the general rule obtaining in such matters. The rule as to designation of area as a part of the description of land is that it should not be made to prevail over the more specific description contrary to the intention otherwise expressed. The case of Taylor v. Fomby, 116 Ala. 621, 627, 22 So. 910, 912 (67 Am. St. Rep. 149), thus states the rule:

" * * * We may appropriately repeat what has been * * * said by Mr. Freeman, in his notes to the case of Heaton v. Hodges, 14 Me. 66, reported in 30 Am. Dec. 731: 'As a result of the general rule already referred to, that where different parts of the description in a deed or patent conflict, those particulars which are most stable and certain, and least liable to be mistaken, are to prevail, it has been the established rule of construction, that a description of boundaries by known and visible natural and artificial monuments or landmarks, is generally to be preferred to a description by courses and distances and other measurements. A principle of law, so well and so long settled, does not require the citations of authorities to support it.' * * *

"The learned annotator makes the further statement of the rule, that 'courses and distances are the next most certain items of description, after calls for monuments, natural or artificial, to which alone they yield. Chadburne v. Mason, 48 Me. 389. In the absence of calls for monuments, therefore, or if the monuments called for cannot be found, the courses and distances control quantity, and all other less definite terms of description.'

"In establishing an original line of survey, according to the field notes used in such survey, attention is given, therefore, first to calls for natural or artificial monuments, and, if these are not to be found, to courses and distances, with the variation of the needle from the true meridian as indicated for the original survey on the field notes. * * * " Smith v. Bachus, 195 Ala. 8, 18, 70 So. 261.

[7] A further general rule may be noted, that where the lines of several surveys conflict, the lines of the elder survey will generally be made to prevail. So of the relative importance of conflicting grants. 5 Cyc. 929, 930.

The general rule in other jurisdictions is that, in locating land lines, calls for natural or artificial objects will control calls for course and distance; that is to say, that calls for course and distance must, in case of conflict, yield to calls for natural and artificial objects. Where the natural and artificial objects have disappeared, and their disappearance and location have been accounted for, they control course and distance. Temple Lumber Co. v. Felts, 260 S. W. 228, Ct. of Civil Appeals (Texas), 9 Dist. (4408).

It is noted that the decree recited certain descriptions of old deed and entries of the lands from the government. The tract book in evidence does not, in all respects, support such recital, as to the entry "by the same man Fondren." When the court held that "none of the Caroline Snodgrass dower on the Tennessee river bottoms lies in the northwest quarter of fractional section 25," the general description of area contained in quitclaim deed from Caroline Snodgrass to John Snodgrass, Sr., was adopted, and the positive calls contained by the warranty deed from Col. John Snodgrass to John Snodgrass, Sr., were rejected, as was also a tendency of the evidence to be adverted to, under a consideration of an estoppel as against respondent J. D. Snodgrass.

The evidence of Mrs. Snodgrass, Spivey, Goosby, Cothran, and Gant confirms the Hall survey and the positive description contained in the warranty deed to which we have adverted.

There was error in the decree as to said lands, south and west of the hedgerow or fence row line from the river, being of the northwest quarter of the section, and also as to that part of the south half of said fractional section 25 south and west of said line, as indicated in the John Snodgrass warranty deed and the Hall survey.

Denying, generally, that he pointed out another line to Mrs. Snodgrass than that now contended for, the respondent does not specifically deny that he pointed out the division line, as detailed by the prospective purchaser Spivey. The testimony of this witness (Spivey) was that the statements to him of what respondent regarded as the south and west boundary of the Swink land, generally, was that as complainant contends for —that said line began on the river, and ex-

tended with or about the picket fence or hedgerow northwest, and in a northwesterly direction, to the side of the ridge or hill.

It is perhaps necessary that we give more specifically the tendency of the evidence of the witness Goosby. He testified that he knew the line between the "Swink land and the Tom Snodgrass lands"; that it commenced at that "hackberry tree," and led over to the "corner up here" "on the hill";' that he "cultivated lands about 15 or 20 steps from the fork of the road coming out of the Gullatt hollow into the river through Snodgrass lands," and rented from Mrs. (Texas) Snodgrass for 1919. The witness was then asked and answered as follows:

"Q. Did Mr. J. D. Snodgrass say anything to you about that land? A. I came down and asked him about renting it, and he said they had not divided it, and I would have to wait till they divided it, and if it fell to him and if it fell to her (Mrs. Snodgrass) I would have to see her about it, and after that I went in the Cotton Exchange and called him out and asked him about it, and he said it fell to Mrs. Tex, and I would have to see her about it. I was picking some cotton there, and Mr. Snodgrass came along, and I said, 'Well, what about them lines?' and he said, 'Yes, that is the line there,' he said, 'that road ought to be about on that line that makes it straight way in.'

"Q. You don't know of your own knowledge where the lines are between Tom Snodgrass and Swink lands? A. I just know they said that is the line."

On cross-examination, this witness stated J. D. Snodgrass told him "that was the line." He was asked: "In 1919 you say that Texas [Mrs. Snodgrass] came down and rented you this piece of land below the road," and answered: "She did not come down there, I went up there. Mr. Snodgrass said I would have to go up and see her." He further testified that he thereafter rented the land from complainant's agent.

The witness Jeff Gant said he knew "where the Tom Snodgrass lands *are on the river and the Swink lands are on the river*"; that when he first knew about these lines "John Barnett went to old man John Snodgrass and I worked for him in the bottom, *up to what we call the Swink line and down to the Gullatt line*." (Italics supplied.) The witness was asked, "Was Tom Snodgrass' land below or the Swink land below?" and answered, "The Swink land is up the river from the Tom Snodgrass land, and the Gullatt land is below it, down the river." Being asked if he knew "the line between the Tom Snodgrass land that Uncle John Snodgrass had charge of then, * * *" the witness answered: "* * * When I went up there, there was an old picket fence run across the bottom; an old picket fence set in here at the bank of the river and run a northwest course. It was directly across the bottom; it wasn't east and west or north and south."

The witness further testified that he knew the location of the line of stakes (standing at the time of his examination), "leading from the hackberry on the bank of the river," in a northeast direction, "to the Gullatt corner"; that clearing was done by negroes who lived with respondent's father on the Swink place; that it did not go as far as the Gullatt corner, but went up the hill in that direction. The witness was then asked, "At that time, you say, Jim Snodgrass' father was in possession of the lands north side of that and Col. John Snodgrass on the lower side of it?" and answered, "Out on the rodge [ridge]. I don't know only by the road and where they stopped clearing; I don't know who was in possession. That was in woods, but in the bottom lands directly in line up to the hill John was in possession of it, Jim's cousin John below it, and Jim's father on the upper side." The witness Gant further testified that he knew "the commissioners * * * that divided up the lands between the Snodgrass heirs" (meaning in 1912); that he showed them "this line," from the river to "that road there," "something near where the stakes are now"; that the commissioners used the dividing line down at the lower end as he gave it; that said line then ran or "went up to the hackberry on the bank [of the river], and then run direct across the bottom there"; and that the Tom Snodgrass bottoms and the Swink place remained in the possession and were managed by J. D. Snodgrass, without division until the instant division, though they "used the division line down at the lower end between that and the Gullatt place," as given them by the witness, which was by the hackberry, etc., as indicated.

The witness detailed a conversation of respondent, in the presence of George Caldwell and Clark Roberts and respondent's boy, and one other whom witness did not recall, in which respondent, J. D. Snodgrass, said that he had shown Mrs. W. E. (Texas) Snodgrass the line contended for by complainant, and said, "but I was just joking." The witness stated this was at the time Caldwell was surveying the lands pursuant to this controversy. The witness was further asked: "Did you say at that time, while you were all there together, that, according to your recollection, the old line between the Swink place and the Tom Snodgrass bottom came into the bottom there about that bridge where the stakes were—where the picket fence run out from the river? Do you remember whether you said you thought the line between them came across about that point?" And he answered: "No, sir; I said the only thing I had to go by the line. I told Jim that and told Texas that; that all I had to go by was back when I was a boy there was an old picket fence and an old road that run through there. That is all I had to go by."

The witness Cothran testified he rented the.

lands first from N. H. (Nat) Snodgrass, then from respondent, and that in 1919 he rented from W. E. Snodgrass. The witness was further interrogated, and replied as follows:

"Q. Did you rent from her [Mrs. Texas Snodgrass] after the division between Jim and she? A. Yes, sir.

"Q. What did Jim say to you about that land? A. He told me that I would have to go to see her, that I fell to her, and I was cultivating some land up on the Swink lake on him, and I give that up and swapped down on her.

"Q. You cultivated along that row indicated on the map from the hedgerow up to the mouth of the Gullatt hollow? A. Yes, sir.

"Q. Jim told you 'that he would not rent to you any more, and that you would have to see Texas? A. Yes, sir; that I would have to see her." .

As to the line between these parties, the witness said that "hedgerow is on the, line between the Gullatt bottom and the Tom Snodgrass bottom"; that the "Tom Snodgrass bottom now belongs to Texas or Bill" (meaning complainant). The witness further testified that respondent told him, as to the land in question, "that I fell to her, and that I would have to go to see her and rent from her. Then I did not do anything only go to see her and rent from her."

As to the Hall survey for division of the Snodgrass lands (1912), the witness Andrews testified, concerning the old hedgerow south of the Caldwell and Hargiss lands, that the survey came long the "fence row" from the old Bellefonte road and ran down this "hedgerow where the rock corner was." The witness further said that there were variations in these surveys from the "hedgerow."

The foregoing evidence supports the Hall survey and the specific recitals in the warranty deed from Col. John Snodgrass to John Snodgrass, Sr., made before the instant controversy arose as to the area and boundary of the lands in question. Respondent, as a witness, denied that he pointed out the old fence row (hackberry line) to the agent acting for W. E. Snodgrass. He did not specifically deny the conversations detailed by the witness Gant, nor did he specifically deny the admission against interest or in the nature of estoppel detailed by the witnesses as having been made before George Caldwell, Clark Roberts, "his boy" (respondent's), and "some one else," who Gant said were present or "stopped there." This material evidence tended to show an estoppel as against respondent to maintain a different boundary line between the Swink and Tom Snodgrass lands, made the subject of the parol partition. Having divided the lands into lots and fixed the amount of the owelty of partition, he should not have dismissed this phase of the evidence by general denial of the conversation with Mrs. Texas Snodgrass. Under this phase of the evidence, the duty was up-

on him to show that his brother's agent knew and understood her election on partition.

[8] We are of opinion that respondent indicated to Mrs. Texas Snodgrass (acting for her infirm husband) the boundary line between the two allotments, as detailed by Mrs. Snodgrass and corroborated, as we have indicated, by the foregoing witnesses. Mrs. Texas Snodgrass, acting for the husband, allowed respondent to make that allotment, and to fix the amount of the owelty of partition ($500); and it was therefore necessary to the end of justice, as between the parties, that he make the partition accurately, as to area, boundaries, and the respective values of said allotments. When respondent gave her the right of election and payment to him of the $500 owelty, it was but natural and required of him by the necessities of the case to inform her of what lands she was electing to take and to pay owelty.

The elements of an estoppel as to lands are stated in Ivy v. Hood, 202 Ala. 121, 79 So. 587; Porter v. Wheeler, 105 Ala. 451, 17 So. 221; Goetter v. Norman Bros., 107 Ala. 585, 19 So. 56; 21 C. J. p. 1204. Having indicated the boundary to the brother's wife and agent, respondent's duty to correct his statement or mistake as to the line pointed out, before his brother elected to take to his prejudice, was imperative; and if, failing in his duty therein, and W. E. Snodgrass having acted to his prejudice, however free from intention to mislead the respondent was in his talk with Mrs. Snodgrass, as to the location of the dividing line he was going to declare, there was loss to him, he must bear it. He should not have indicated to her the whereabouts of the line without accurate information. He should not have made the allotments (indicated as 1 and 2) with the owelty of partition without accurate information. Ivy v. Hood, 202 Ala. 121, 79 So. 587; Greil Bros. Co. v. McLain, 197 Ala. 136, 140, 72 So. 410; Corry v. Sylvia y Cia, 192 Ala. 550, 68 So. 891, Ann. Cas. 1917E, 1052. The surveys should have been first made; then the parol partition accompanied by the delivery of possession, or by the execution of conveyances preceding the delivery of possession.

Having indicated that boundary line to Mrs. Snodgrass, and admitted to others that he' did so, as she has testified, in a court of equity respondent is bound by that statement, without regard to his good intentions or to the fact of the true or ancient line. It became, as between them, the line agreed upon for the allotments. Respondent could not remain silent, under the circumstances, entering into that parol partition, and allow Mrs. Snodgrass to make the selection and pay the owelty of partition for W. E. Snodgrass, without disabusing her mind of an erroneous impression. If such he had given her, by reason of their prepartition negotia-

tions, and conversations as to the exact location of the boundary line, which entered into and influenced the consummation of the parol partition. Ivy v. Hood, 202 Ala. 121, 79 So. 587.

The case should be retried. It was not intended to have a reformation of the conveyances so to be made to convey lands not embraced in the pleadings. This will not be permitted to be decreed as to the specific tract indicated as the south east quarter of the northeast quarter of section 24, township 4, range 6 east, for the lack of necessary parties at interest, or as being without the issues of fact made by the pleading and evidence responsive thereto.

A careful consideration of the evidence convinces us: (1) That it was not the intention of W. E. and J. D. Snodgrass to carry into the partition agreement lands held individually, and not as tenants in common; (2) that the intention and agreement of those parties was to divide the lands owned jointly by them and J. Thomas Snodgrass at the time of the latter's death; (3) and that the descriptions employed in said conveyances were intended to be confined to lands jointly owned, as the parties to the agreement understood them to be, and, as pointed out by J. D. Snodgrass to Mrs. Texas Snodgrass, as the boundary line which we have indicated.

The decree of the circuit court, in equity, is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and MILLER, JJ., concur.

